## PRESTON LEE STEVENSON, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 28851

June 25, 1998                                    961 P.2d 137

*Steven G. McGuire,* State Public Defender, *James P. Logan,* Chief Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *R. Michael McCormick,* District Attorney, *Conrad Hafen,* Chief Deputy District Attorney, Humboldt County, for Respondent.

## OPINION

*Per Curiam:*

On September 19, 1995, appellant Preston Lee Stevenson ("Stevenson") was a passenger on a Greyhound bus that made a temporary stop at the Greyhound bus depot in Winnemucca. There were over thirty people on the bus; Stevenson was the only African-American passenger.

While the bus was stopped, Investigator Craig Ronzone ("Ronzone") of the Nevada Division of Investigations, Humboldt County Sheriff's Deputy Dave Knopf ("Knopf"), and Nevada Highway Patrol Trooper Brent Harmon ("Harmon") performed a drug sweep of the bus.

A drug sweep entails a boarding of the bus, examination of the passengers' tickets and identification, and brief questioning about the passengers' baggage. The purpose of the sweep is to look for unclaimed baggage and to find narcotics being transported aboard the bus.

Ronzone and Knopf boarded the bus, while Harmon waited just outside with a drug-sniffing dog. Ronzone, who wore plain clothes with his badge displayed, proceeded to the rear of the bus, while Knopf, who was uniformed, stood at the front of the bus near the driver's seat, leaving room for passengers to get by. Ronzone announced to the passengers that he was with the narcotics task force and that he needed to ask them a few questions before getting them on their way.

Ronzone began questioning the passengers in the rear of the bus first, working his way forward. He would check each passenger's ticket, ask questions about their identity and destination, then ask them which bag was theirs while placing his hand on it. Ronzone stood behind and to the side of each passenger's seat so as not to block the passenger's path to the aisle.

When Ronzone got to Stevenson, he asked for Stevenson's ticket. Ronzone questioned him and verified that the information Stevenson gave matched the information on the ticket. Ronzone then returned Stevenson's ticket. Stevenson identified which bag in the overhead compartment was his, and Ronzone put his hand on the bag and moved it back. Ronzone noticed the bag felt heavy and asked Stevenson what was in the bag. Stevenson said it contained clothes.

What happened next is in dispute. According to the State, Ronzone asked if he could search the bag. Stevenson looked down and nervously replied, "I don't know what for." Ronzone then asked Stevenson if he would consent to having the dog sniff the bag. Stevenson said, "Okay." Per Ronzone's instructions,

Stevenson took his bag and got off the bus. Ronzone told Harmon that Stevenson refused the search, but consented to have the dog sniff the bag. Ronzone then went back to questioning the other passengers.

Stevenson again gave permission to Harmon to have the dog sniff the bag. Stevenson then put the bag in the baggage compartment under the bus per Harmon's instructions and voluntarily returned to his seat. The dog sniffed the baggage compartment and alerted on Stevenson's bag. Harmon then asked Stevenson to exit the bus again. Ronzone exited the bus with Stevenson. Harmon told Stevenson that the dog alerted to the bag and asked if he had narcotics in the bag. Stevenson replied that he had marijuana cigarettes in the bag. Harmon then asked if he could search the bag. Stevenson verbally consented. When Harmon opened the bag and pulled out a package hand-wrapped in cellophane, Stevenson ran. After a brief foot pursuit, Ronzone apprehended and arrested Stevenson.

The officers discovered a 9mm semi-automatic pistol, a pen containing a small amount of marijuana, and 15.6 grams of black-tar heroin in the bag. The black-tar heroin was found wrapped in plastic, which was in a small plastic bag along with coffee grounds. This bag, in turn, was wrapped in cellophane and submerged in a plastic container full of water. The container, then, was encased in five larger zip-lock bags, and the entire package wrapped several times in cellophane.

However, according to Stevenson, the facts are slightly different. Stevenson stated he refused to consent to the search of the bag. Upon doing so, Ronzone purportedly ordered him to take the bag off the bus and place it on the ground. Knopf also exited the bus at this time. Stevenson again allegedly refused to consent to a search of the bag. Stevenson was asked whether he was a member of a gang and whether he smoked marijuana. Stevenson answered that he was not in a gang, but that he did smoke marijuana. Stevenson was then told to put the bag in the baggage compartment underneath the bus and return to his seat. Several minutes later, Stevenson was ordered off the bus. When he got off the bus, he saw the officers searching through the bag, and then he ran.

Stevenson was charged with one count of trafficking in a controlled substance and one count of being an ex-felon in possession of a firearm.[1]

On February 6, 1996, Stevenson filed a motion to suppress the black-tar heroin evidence on the grounds that it had been obtained in violation of his Fourth Amendment rights against unreasonable

---

[1]Stevenson has a prior conviction in California for felony possession of crack cocaine.

search and seizure. On February 26, 1996, the district court heard oral arguments on the motion. On March 7, 1996, the district court found the State's witnesses to be more credible than Stevenson and denied the suppression motion.

On June 3, 1996, pursuant to a plea agreement, Stevenson was convicted of one count of trafficking in a controlled substance, in violation of NRS 453.3385, and was sentenced to forty-eight months in prison and a fine of $2,000.00. As a condition to his guilty plea, Stevenson retained the right to appeal the district court's denial of the suppression motion.

On June 18, 1996, Stevenson timely filed his notice of appeal.

## DISCUSSION

Stevenson argues that the police unreasonably seized him and searched his bag, thereby violating his Fourth Amendment rights. The State counters that the encounter and the subsequent search of Stevenson's bag were entirely consensual.

### I. *Seizure*

Initially, we must determine if a seizure occurred. The United States Supreme Court has held that police drug sweeps on commercial busses are not necessarily seizures. Florida v. Bostick, 501 U.S. 428, 435-40 (1991). In that case, police in Broward County, Florida, routinely boarded busses at bus depots and asked passengers for their tickets and for permission to search their bags. During one of those sweeps and without articulable suspicion, two uniformed officers picked out Bostick and began to question him. After checking his ticket, the police requested Bostick's permission to search his luggage and advised him that he had the right to refuse consent. The defendant consented to the search. The police found cocaine in the defendant's bag. Bostick moved to suppress the cocaine, arguing his Fourth Amendment rights had been violated. The Florida Supreme Court held that the practice of boarding busses, questioning passengers, and searching luggage with consent was unconstitutional. *Id.* at 431-33.

The United States Supreme Court reversed, holding that Florida's per se rule was erroneous. *Id.* at 440. The Court held that "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439; *see also* United States v.

Gonzales, 979 F.2d 711, 713-14 (9th Cir. 1992) (holding that an armed and uniformed Border Patrol agent did not conduct a seizure by boarding a bus, questioning a passenger, and requesting to search that passenger's bag when the agent had no articulable suspicion). Further, a bus is no different than a city street or other public place for purposes of this test. Although it refrained from deciding whether a seizure occurred, the Court noted the facts left ''some doubt'' as to whether one did. *Bostick,* 501 U.S. at 439-40.

Here, the officers boarded the bus and announced their intent to conduct a drug sweep and to ask the passengers questions. They also indicated that they would work as fast as they could to keep everyone on schedule. Ronzone kept his badge displayed, but his weapon concealed. He also stood to the side and slightly behind each passenger's seat as he was questioning them, so as not to block them in. Knopf stayed up front near the driver's seat, leaving a space for passengers to get by. Passengers did, in fact, get on and off the bus to smoke a cigarette or get some air. No physical force or display of force was used at any time until Stevenson fled. Additionally, Stevenson did initially refuse to consent to a search of the bag. We agree with the State's assertion that this fact indicates Stevenson knew he could refuse to consent to a search and felt free to do so. Therefore, applying *Bostick,* we conclude that the circumstances indicate that a reasonable person would have felt free to decline Ronzone's request or terminate the encounter. As such, we conclude a seizure did not occur.

Contrary to the dissent's assertion, the evidence presented at trial shows that people were, in fact, freely getting on and off the bus during the encounter. Further, as stated above, Stevenson obviously felt free to refuse the officers' requests as evidenced by his initial refusal of Ronzone's request to search his bag. While the dissent is ''worried'' about drug sweeps on busses and believes that the drug sweep in this case was ''illegal,'' we conclude that the facts of this case, as set against established holdings of the United States Supreme Court, clearly show that no ''systematic violation of [Stevenson's] constitutional rights'' took place.

II. *Consent*

Next, we must determine if the search of Stevenson's bag was consensual.

As in the present case, the defendant in *Bostick* stated he never gave consent, but the police contradicted him saying he did. Also, Bostick claimed the police never told him he could refuse consent. The Florida Supreme Court resolved this in the state's

favor as it was a question of fact decided by the trial court. The United States Supreme Court agreed. *Bostick,* 501 U.S. at 432.

Here, as in *Bostick,* the officer questioned Stevenson about his ticket and then asked if he would consent to a search of the bag. While Ronzone apparently did not tell Stevenson that he could refuse to consent, we conclude it is immaterial because Harmon's police report, all testimony, and Ronzone's subsequent request to have the dog sniff the bag instead show *Stevenson exercised his right to refuse to consent to the search. See also* Schneckloth v. Bustamonte, 412 U.S. 218, 249 (1973) (holding that knowledge of the right to refuse to consent to a search is not required to determine voluntariness).

When Ronzone asked if Stevenson would allow the dog to sniff the bag, Stevenson consented. Stevenson then consented to a search of the bag before fleeing.

Stevenson contends that he did not consent to have the dog sniff the bag or to the search of the bag, but the district court found that Stevenson did consent and that his testimony was not credible. Voluntariness is a question of fact to be determined from the totality of the circumstances. Canada v. State, 104 Nev. 288, 290-91, 756 P.2d 552, 553 (1988). Further, we have held that a district court's findings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence. State v. Harnisch, 113 Nev. 214, 219, 931 P.2d 1359, 1363 (1997), *reh'g denied,* 114 Nev. 225, 954 P.2d 1180 (1998).

Nothing other than Stevenson's own testimony supports his contention that he never consented to Ronzone's or Harmon's requests. On the other hand, all the officers present testified that he did give consent. Therefore, we conclude that substantial evidence supports the finding that Stevenson consented to have the narcotics detection dog sniff the bag and to the search.

## CONCLUSION

From the facts of this case, we conclude that the bus sweep did not violate Stevenson's constitutional rights because the encounter with police was in a public place and a seizure did not occur. We further conclude that substantial evidence supports the district court's finding that Stevenson consented to have the dog sniff the bag and then consented to have the officers search the bag. Therefore, the district court correctly denied Stevenson's suppression motion.

Accordingly, we affirm Stevenson's conviction.

SPRINGER, C. J., dissenting:

I see this case in an entirely different light from that of the

majority. Interstate busses are being commandeered in Winne-mucca by small posses of lawmen (calling themselves Narcotics Task Forces). These posses interrogate and sometimes search bus passengers when the busses stop in Winnemucca. They call these forays "bus encounters," and they admit to at least seventy-five of these boarding parties. In my opinion, these incursive board-ing parties should be stopped because they are violative of state and federal constitutional prohibitions against unlawful searches and seizures.

The boarding party of four involved in this case was comprised of Investigator Craig Ronzone of the Nevada Investigations Divi-sion, Deputy Sheriff Dave Knopf, State Trooper Brent Harmon and a canine drug inspector named Katie. Each member of the posse had his or her special assignment. Investigator Ronzone was the first to board the bus and commandeer[1] its passengers; he entered the bus and went to his command post at the rear of the bus. Deputy Sheriff Knopf (according to the State's brief) was stationed at the door of the bus, "in [the] front of the bus close to the driver[']s seat." Trooper Harmon and Katie were posted outside of the bus near the entry door.

All members of the boarding party were armed (except Katie). Task Forcers Knopf and Harmon were in police uniform; Investi-gator Ronzone was not in uniform upon boarding the bus, but he immediately displayed his badge to the passengers, "so they could see it."

After taking his post at the rear of the bus, Investigator Ron-zone (according to the State's brief) announced to the passengers that he "was with the narcotic task force," that he was searching for narcotics and that it was his intention to interrogate the passengers, or, as he put it "to take a few minutes of their time and talk to them." Investigator Ronzone testified that he did not

---

[1]"Commandeer" seems like the correct description of the Task Force's incursion. The inspector testified that he boarded the bus, "pulled out [his] badge" and then engaged in some "consensual talk with the passengers on the bus, looking for a controlled substance . . . ."

After the time that the inspector announced that he was looking for contraband and that he was going to question the passengers about controlled substances, the passengers certainly were not, as claimed by the inspector, "free to do whatever they want[ed]."

The inspector's conclusory testimony that people were "free" to leave the bus while he was interrogating them and his reply in answer to a leading question that passengers were actually "leaving [and] getting on and off the bus" does not persuade me that the passengers had not been "seized" at the time the officer was conducting his search for "controlled substance[s]." The officer's telling passengers, in effect, "I am a narcotics officer. I am looking for narcotics and I want to question you," cannot be taken as an invitation to leave the bus at will.

advise those being interrogated that they were free to leave or that they were not required to talk to him. It is clear to me that the bus passengers were "seized" at the time the Task Force commandeered the bus, rendering any evidence found thereafter inadmissible. The events that occurred *after* the bus was commandeered, including Mr. Stevenson's claimed consent to having his bag sniffed by the police dog, then, have no bearing on the admissibility of the evidence taken from Mr. Stevenson's bag.

"Only when the officer, by means of physical force or *show of authority*, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Florida v. Bostick, 501 U.S. 429, 434 (1991) (emphasis added). In the context of this "bus encounter," "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 436. The test is not, of course, "whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." California v. Hodari D., 499 U.S. 621, 628 (1991).

The officers involved in this case clearly used a show of authority to elicit cooperation from the passengers, as evidenced by Investigator Ronzone's statement that he displayed his badge to the passengers "so they could see it." In addition, the officers' tactical positions, with one armed officer at the rear of the bus, another at the only entry/exit of the bus, and a third with a police dog just outside the bus, makes it rather clear that the officers intended to exercise control over the bus and its passengers. The passengers on the commandeered bus did not "feel free to decline the officers' requests or otherwise terminate the encounter" under such circumstances. Stevenson, himself, obviously, did not feel free to terminate his encounter with the boarding party, or he would not have agreed to have his bag "sniffed" by Katie (if, indeed, he did so consent).

Although the United States Supreme Court declined to rule that the bus sweeps at issue in *Bostick* were necessarily unconstitutional, under the circumstances attendant to the present case, the manner in which the bus was commandeered and the passengers sequestered exceeds the scope of permissible search and seizure.[2]

---

[2] I note that the defendant in *Bostick*, unlike Stevenson, was "specifically advised . . . that he could refuse consent." *Id.* at 437. I do not contend that the officers' not informing Stevenson of a right to refuse to consent is alone dispositive of this case, but this does suggest the failure to advise him of this right would make a reasonable person even more inclined to believe that he was under the officers' dominion and control.

The bus-boarding here exceeds the scope of permissible search and seizure under the Nevada Constitution. *See* Barrios-Lomeli v. State, 113 Nev. 952, 957, 944 P.2d 791, 794 (1997), *petition for reh'g pending,* (although the United States Supreme Court abandoned the exigency requirement for warrantless search of automobile, Nevada declines to do so).

I am convinced that any citizen, any reasonable person, would have felt that the passengers' movements were restricted by this boarding party. It may be, as contended by the State, that Investigator Ronzone did not intend "to block [Mr. Stevenson's] ability to leave the bus at any time, that no guns were pulled and that he asked the same type of questions to each passenger"; but this does not alter the conclusion that any reasonable person would have considered himself or herself restrained by the four members of this boarding party and not free to leave once the bus was boarded and surrounded.

I dissent because I believe that these boarding parties, at least as they are currently being conducted, are illegal, and because I believe that Mr. Stevenson was subject to an unlawful search and seizure. I am worried about this practice because innocent passengers should not be subjected to systematic violation of their constitutional rights in the hope that a drug courier might occasionally be apprehended. This court should condemn the practice and reverse the district court's order denying the motion to suppress.