*437
 
 OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 Chanon Somee was convicted of four counts of attempted murder with the use of a deadly weapon with the intent to promote, further, or assist a criminal gang and two counts of carrying a concealed weapon.
 
 [1]
 
 He now appeals those convictions arguing that the district court erred in admitting evidence obtained through: (1) a pat-down search of Somee and (2) field interviews with Somee conducted prior to the crime.
 

 Regarding the pat-down search, we apply the standard of review set forth in
 
 State v. Lisenbee.
 

 [2]
 

 We hold that in determining whether an officer has reasonable articulable suspicion under the totality of the circumstances to justify a pat-down search, one factor a court may consider is whether the officer had reasonable articulable suspicion that the suspect was involved in narcotics activity. The record in this case, however, is insufficient for us to review the district court’s decision to admit the challenged evidence.
 

 Regarding the field interviews, while we recognize that such interviews are an important tool in community policing and often garner information that is admissible at trial, we hold that such interviews may also, in certain circumstances, violate a defendant’s constitutional rights, necessitating the exclusion of the evidence obtained from the interview. The record before this court, however, is insufficient for us to determine whether the field interviews conducted in this case violated Somee’s constitutional rights. Lastly, we hold that the evidence obtained during the field interviews concerning Somee’s gang affiliation did not constitute inadmissible character evidence.
 

 Because the record is inadequate for this court to consider the constitutional challenges to the pat-down search and the field interviews, we reverse the judgment of conviction and remand this matter to the district court for a new trial.
 
 [3]
 

 
 *438
 

 FACTUAL BACKGROUND
 

 The shooting
 

 On April 12, 2003, three young men were playing an online video game at the Webjoy Internet Café in Las Vegas when they were approached by Somee, his brother Akaphong ‘ A.K.” Somee, and three other young men. The two groups declared rival gang affiliations and traded insults and threats. A fight broke out when Somee attacked one of the three young men in the first group. During the fight, Somee and at least one other person fired guns. Two young men from the first group and a Webjoy patron sustained gunshot wounds.
 

 The officers investigating the shooting retrieved several bullets and casings from the internet café. Upon further examination, police determined that some of the bullets came from a .25-caliber handgun, while other bullets came from a handgun capable of firing either a .38- or a .357-caliber bullet. The police did not arrest anyone involved in the shooting until over one month later.
 

 The contested search
 

 On May 13, 2003, Las Vegas Metropolitan Police Department Officers Shawn Smaka and Greg Theobald responded to a 911 call from a residential neighborhood at around noon. The record con
 
 *439
 
 tains no evidence of the 911 call’s contents other than a police report prepared by Detective Brian Kobrys. According to Detective Kobrys, the caller stated that a young Asian man had walked through the caller’s backyard to the street in front of the caller’s house, where he joined several other young Asian men around a red compact car. Detective Kobrys’s report also indicated that the caller said one of the young men had been snorting cocaine by the car.
 

 The responding officers’ testimony differed as to whether the four youths were inside the car when the officers arrived, how the four youths responded to the officers’ arrival, and the reasons for conducting pat-down searches on the youths. Before the grand jury and at trial, Officer Theobald testified that when he and Officer Smaka responded to the 911 call, he saw three youths inside a red car and one youth, Somee, standing outside of the passenger side door. When they arrived at the scene, according to Officer Theobald, they ordered the youths to exit the red car and line up in front of the police car. He stated that before the driver, A.K., exited the vehicle, A.K. reached under the seat, making furtive movements. For that reason, Officer Theobald said, they patted down all four youths for weapons. He further testified that it was not until after the officers had searched Somee and handcuffed the four youths that he asked whether they were affiliated with a gang. He testified that the officers had not given the youths
 
 Miranda
 
 warnings at that point.
 

 At trial, Officer Smaka testified that when he and Officer Theobald arrived, they found Somee, A.K., another young Asian man, and a young Asian woman gathered around outside the red car. According to Officer Smaka, the officers exited their vehicle and ordered the youths to line up in front of it, at which point all four youths looked like they were going to flee, but instead obeyed the officers’ order. The officers then asked the youths why they were there and with what gang they were affiliated. Officer Smaka testified that the officers patted them down because of the nature of the 911 call, the fact that they were wearing baggy clothes, and their admitted gang affiliation. Officer Smaka did not testify whether they gave the youths
 
 Miranda
 
 warnings.
 

 During the pat-down search, both officers agreed that Officer Theobald located a small .25-caliber handgun in Somee’s right front pants pocket and brass knuckles in Somee’s back pocket. Officers Smaka and Theobald contacted Detective Kobrys of the gang investigation unit. Upon his arrival, Detective Kobrys assumed responsibility for the case and took possession of the firearm.
 

 Detective Kobrys took Somee and the two other males to the gang unit for questioning. They were placed in separate interview rooms and handcuffed to the walls. Somee was informed of his
 
 Miranda
 
 rights before questioning, and during questioning, Somee
 
 *440
 
 admitted to being present at the internet café on the night of the shootings and to having been involved in a fight with the victims. Somee also admitted that he had fired two shots that night, inside the café, from the same firearm that Officers Smalca and Theobald found in his pocket during the search. In addition, Somee confirmed that A.K. and another friend were with him at the café on the night of the shooting. Somee admitted that they left the café that evening in A.K.’s red Geo Prism. Detective Kobrys also testified that Somee indicated that the fight began because he “got a disrespectful look” from one of the other individuals at the café. Somee stated that he fired his weapon because he and his friends were “losing the fight.”
 

 Before trial, Somee moved to suppress evidence of the weapons that the police found on Somee during the search and the statement that he made after the search. The district court held a hearing at which it attempted to hear all of Somee’s suppression motions. On this motion, the court heard from the State and Somee regarding the circumstances of the search, but neither called witnesses nor offered evidence. Somee stated that he based his factual presentation on the testimony given at the grand jury. Somee argued that nothing in the facts provided reasonable articulable suspicion that Somee was armed and dangerous. After hearing the arguments, the court summarily denied the motion without stating its reasoning or making any findings of fact. The later written order similarly denied the motion without stating any basis for the decision.
 

 The field interviews
 

 During trial, Officers Julien Grant, Edward Reese, and Shawn Romprey testified that they had interviewed Somee on separate occasions prior to the shooting and completed field interview cards recording their interactions with Somee. Officer Grant explained that a field interview card is an index card on which police officers document contacts with individuals. The cards contain information concerning a person’s name, address, height, date of birth, and physical description. Officers also may record with whom they see an individual and the contents of the individual’s statements. If given the opportunity, officers take Polaroid pictures of individuals to attach to the card. Although in this case the actual field interview cards were not proffered at trial, the officers testified concerning the information contained on the cards, including Somee’s affiliation with the Horney Boyz gang. Detective Kobrys also used a Polaroid picture from one of the field interview cards in photographic lineups he created.
 

 At trial, Somee did not object to the admission of the field interview cards on the ground that the officers had obtained the information in violation of his constitutional rights. Somee objected only on the ground that admission of the evidence of his prior con
 
 *441
 
 tacts with police officers was impermissible evidence of Somee’s character. The State clarified that it did not intend to adduce evidence of the factual circumstances surrounding the contacts, but only Somee’s admissions that he was a member of the Homey Boyz gang and that officers had previously found him in possession of weapons. The district court found that the information was relevant to prove the charged gang enhancement and Somee made no further objections to the officers’ testimony.
 

 DISCUSSION
 

 On appeal, Somee makes several assignments of error. In this opinion, we address only two in detail: (1) that the district court erred when it admitted the gun and his later confession because the police officers obtained them as a result of an unconstitutional pat-down search of Somee; and (2) that the district court erred when it admitted evidence obtained during field interviews because the field interviews violated Somee’s Fourth and Fifth Amendment rights, and the admission of the evidence at trial violated the prohibition against the use of character evidence under NRS 48.045. We determine that the district court erred when it admitted the gun and Somee’s confession without making factual findings to support its decision. Accordingly, we reverse the district court’s judgment of conviction and remand this matter for a new trial. On remand, the district court should also consider the previously unchallenged constitutionality of the field interviews.
 

 Fourth Amendment challenge to the pat-down search
 

 We must now determine whether evidence seized during the pat-down search of Somee was admissible. Somee argues, as he did below, that the officers did not have reasonable articulable suspicion that he was armed and dangerous to justify the pat-down search. However, Somee does not argue that the police officers lacked reasonable suspicion to detain him.
 

 The interplay of the factual circumstances surrounding a search or seizure and the constitutional standards for when searches and seizures are reasonable requires the two-step review of a mixed question of law and fact as applied by this court in
 
 State
 
 v.
 
 Lisenbee.
 

 [4]
 

 We review the district court’s findings of historical fact for clear error but review the legal consequences of those factual findings de novo.
 
 [5]
 
 For this two-step analysis to be effective, district courts must make specific factual findings.
 
 [6]
 
 Without an adequate
 
 *442
 
 record, this court cannot review a district court’s decision to admit or suppress evidence. “Although certain facts may be inferred from the district court’s ruling, ‘[we] decline to speculate about the factual inferences drawn by the district court.’ ’ ’
 
 [7]
 

 Under NRS 171.123(1), Lisenbee,
 
 [8]
 
 and
 
 Terry v. Ohio,
 

 [9]
 

 police officers may temporarily detain a suspect when officers have reasonable articulable suspicion that the suspect “has committed, is committing or is about to commit a crime.”
 
 [10]
 
 The police officers may then conduct a limited pat-down search for weapons of a suspect who they reasonably believe is “armed with a dangerous weapon and is a threat to the safety of the peace officer or another.”
 
 [11]
 
 Such reasonable belief, in both instances, must be based on specific articulable facts that warrant the search and seizure.
 
 [12]
 

 The State argues that because the 911 call alleged that the young men were using drugs, the officers had a reasonable belief that the young men and woman had weapons. The State cites
 
 United States v.
 
 Sakyi,
 
 [13]
 
 a case from the Fourth Circuit Court of Appeals, in which that court determined that because people who sell drugs often carry guns, an officer had reasonable suspicion that a man he suspected of selling drugs was armed and dangerous.
 
 [14]
 
 We do not adopt the apparent per se rule linking drugs and guns used in the Fourth Circuit but choose instead to adopt the approach that reasonable articulable suspicion of narcotics activity is a factor which, in light of the totality of the circumstances, may give rise to a reasonable articulable suspicion that a suspect poses a danger to the officer or the public such that a brief pat-down search of the suspect is justified. In so doing, we note that under the United States Supreme Court’s holding in
 
 Florida v.
 
 J.L., an anonymous accu
 
 *443
 
 sation alone that a suspect is carrying a gun is not enough to justify a seizure of the suspect.
 
 [15]
 
 By extension, without more, an anonymous accusation that a suspect is engaged in narcotics activity cannot create a reasonable articulable suspicion justifying a pat-down search.
 

 In this case, the district court failed to conduct an evidentiary hearing, make factual findings regarding the officers’ search of Somee, or state a legal standard for making its determination. Although Somee did not specifically request an evidentiary hearing, the district court’s failure to make factual findings about the circumstances surrounding the search prevents us from reviewing its decision. We therefore reverse the district court’s judgment of conviction and remand this matter for the district court to hold an evidentiary hearing, make specific factual findings, and apply the legal standard as articulated in this opinion. If after considering the totality of the circumstances the district court concludes that the officers did not have reasonable articulable suspicion that Somee was armed and dangerous, the evidence obtained from the search, including Somee’s confession, must be suppressed in the new trial, unless the State proves that an exception to the exclusionary rule applies.
 
 [16]
 

 Constitutionality of field interviews
 

 We now turn to the question of whether the field interviews violated Somee’s constitutional rights. Somee asserts that field interviews, during or after which police officers record information regarding contacts with people in the community, including a picture, name, address, gang affiliation, associates, and date of birth, violate the Fourth and Fifth Amendments. Because of the constitutional violations, Somee argues that information obtained during his field interviews should have been excluded at trial. The State contends that field interviews are important law enforcement tools necessary to ensure public safety.
 

 Somee failed to object to the constitutionality of the field interviews at trial. Although failure to object at trial generally precludes appellate review, this court has the discretion to review constitutional or plain error.
 
 [17]
 

 
 *444
 
 We have recognized the right of people “to wander freely and anonymously, if [they] so choose, without being compelled to divulge information to the government about who [they] are or what [they] are doing.”
 
 [18]
 
 This right only need give way to reasonable government intrusions.
 
 [19]
 
 Evidence obtained in violation of this right must be suppressed.
 
 [20]
 

 While we agree with the State that, when performed within the bounds of constitutional limitations, field interviews are important tools of police investigatory work, we hold that field interviews, like other police-community interactions, must comply with the United States and Nevada Constitutions, or evidence obtained thereby must be suppressed. Unless a recognized exception applies, both physical evidence and a defendant’s statements obtained as a result of an illegal search or seizure should be suppressed.
 
 [21]
 
 Furthermore, involuntary statements should be suppressed as well as incriminating statements made by a suspect under custodial interrogation unless
 
 Miranda
 
 warnings have been given or other procedural safeguards have been followed.
 
 [22]
 
 In contrast, evidence obtained through consensual encounters between the police and citizens, even minors, will not be suppressed.
 
 [23]
 

 If the totality of the circumstances surrounding the field interview suggests that the encounter was consensual, all evidence ob
 
 *445
 
 tained thereby should be admitted.
 
 [24]
 
 Likewise, if the information was obtained during a legal seizure or a custodial interrogation accompanied by
 
 Miranda
 
 warnings, no constitutional basis would exist to suppress the evidence.
 
 [25]
 
 If, however, the totality of the circumstances indicates that the evidence was obtained during an illegal seizure, by coercion, or in response to unwarned custodial interrogation, it should be suppressed.
 

 In this case, Las Vegas Metropolitan Police Department officers completed field interview cards, at various times and in various situations, when they encountered Somee. Although the State did not proffer the actual field interview cards at trial, the officers testified as to the information contained on the cards, including Somee’s purported gang affiliation with the Horney Boyz. Detective Kobrys used a photograph obtained from one of the field interviews to create the photographic lineups used in this case. However, Somee did not challenge the constitutionality of the field interviews at trial. Therefore, the district court did not consider the factual circumstances surrounding the interviews that Somee now challenges. Nevertheless, given the need for a new trial in this matter as discussed above, we have taken this opportunity to address the constitutionality of field interviews in general. On remand, the district court should determine whether the evidence obtained in the interviews should have been admitted under the standards discussed above.
 
 [26]
 

 Field interviews as improper character evidence
 

 Somee objected to the admission of the field interviews as improper evidence of his bad character. Somee contends that the State was required to ask for a
 
 Petrocelli
 

 [27]
 

 hearing prior to admission of the evidence of other bad acts and that a limiting instruction should
 
 *446
 
 have been given to the jurors. The State asserts that evidence of Somee’s prior interactions with police was necessary to provide the jury with the complete story of the charged crime.
 

 A district court’s decision to admit or exclude evidence of prior bad acts rests within its sound discretion and will not be reversed by this court on appeal absent manifest error.
 
 [28]
 
 Evidence of a defendant’s character is inadmissible to prove that he or she acted in conformity with that character trait on the occasion in question unless certain exceptions apply.
 
 [29]
 

 In this case, the district court found that evidence of Somee’s gang affiliation was relevant to the gang enhancement for the charged crime. Somee’s admissions that he was affiliated with or was a member of the Homey Boyz were not evidence of a trait of character, but were admissions relevant to prove the charged crime. Therefore, the district court did not admit the evidence as character evidence within an exception. Because a jury might make impermissible inferences regarding Somee’s character after hearing that he had prior contact with police officers, the district court instructed the jury that it could not consider the evidence adduced about Somee’s gang membership to infer that he was of bad character or had a disposition to commit crimes. We hold that neither the State nor the district court committed error under
 
 Petrocelli.
 
 As the evidence was not character evidence, we need not address whether the district court erred in failing to provide a limiting instruction at the time of the admission of the evidence.
 

 CONCLUSION
 

 Because the record in this case is insufficient for this court to determine the constitutionality of the police officers’ pat-down search of Somee and the field interviews conducted prior to the crime, we reverse the judgment of conviction and remand the matter for a new trial consistent with this opinion. However, we conclude that the district court properly determined that the information obtained during the field interviews did not constitute inadmissible character evidence.
 

 Parraguirre and Douglas, JJ., concur.
 

 [1]
 

 In accordance with NRS 193.169(1), Somee’s sentence was enhanced only once despite being charged with enhancements for both the use of a deadly weapon and the intent to promote, further, or assist a criminal gang.
 

 [2]
 

 116 Nev. 1124, 1127, 13 P.3d 947, 949 (2000).
 

 [3]
 

 Somee also raises the following issues on appeal: (1) the identification procedures used by the police were unnecessarily suggestive and allowing the witnesses to identify him at trial violated his right to due process, (2) his confession was obtained in violation of statutes protecting juveniles and therefore it should have been suppressed as involuntary, (3) his picture was obtained in
 
 *438
 
 violation of statutes protecting juveniles and therefore it should have been excluded, (4) statements made by a prospective juror deprived Somee of a fair trial, (5) the State failed to prove the charges against Somee beyond a reasonable doubt, (6) the State’s discovery violations deprived Somee of due process and effective assistance of counsel, and (7) the district court erred when it gave improper jury instructions regarding self-defense.
 

 Because we are reversing Somee’s convictions on other grounds, in-depth analysis of these issues is unnecessary. We have, however, considered Somee’s additional assignments of error as follows: (1) on remand, the district court must also consider whether the picture, obtained during a field interview and used in the identification process, should have been suppressed; (2) the failure to notify Somee’s mother of his arrest does not create a legal bar to the admissibility of his confession,
 
 see Ford v. State,
 
 122 Nev. 796, 802, 138 P.3d 500, 504-05 (2006) (holding that failure to notify parent is factor to be considered in determining the voluntariness of a minor’s statement but does not require suppression of a minor’s confession); (3) because we remand for the district court to review whether Somee’s picture was obtained in accordance with the Fourth and Fifth Amendments, we decline to address his argument that NRS 62H.010(4) prohibits the State from taking pictures of minors during field interviews and retaining them in gang files for later use; (4) in light of our reversal and remand of this matter for a new trial, we do not reach the merits of the prospective juror’s statements made during Somee’s trial; (5) the State presented sufficient evidence for a rational juror to find Somee guilty beyond a reasonable doubt,
 
 see Origel-Candido v. State,
 
 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); (6) in light of the remand for a new trial, we do not reach the merits of any possible prejudice resulting from the State’s alleged delays in providing discovery; and (7) in light of the remand for a new trial, we do not reach the propriety of the self-defense instructions.
 

 [4]
 

 116 Nev. at 1127, 13 P.3d at 949.
 

 [5]
 

 Id.
 

 [6]
 

 Rosky v. State,
 
 121 Nev. 184, 191, 111 P.3d 690, 695 (2005).
 

 [7]
 

 State v. Ruscetta,
 
 123 Nev. 299, 304, 163 P.3d 451, 455 (2007) (quoting
 
 State
 
 v.
 
 Rincon,
 
 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006)).
 

 [8]
 

 116 Nev. at 1127, 13 P.3d at 949.
 

 [9]
 

 392 U.S. 1, 21-22 (1968).
 

 [10]
 

 NRS 171.123(1).
 

 [11]
 

 NRS 171.1232(1).
 

 [12]
 

 Terry,
 
 392 U.S. at 21.
 

 [13]
 

 160 F.3d 164 (4th Cir. 1998).
 

 [14]
 

 Id.
 
 at 169 (“[I]n connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer’s safety and the safety of others.”).
 

 [15]
 

 529 U.S. 266, 274 (2000).
 

 [16]
 

 See Wong Sun v. United States,
 
 371 U.S. 471, 484-85 (1963).
 

 [17]
 

 Grey
 
 v.
 
 State,
 
 124 Nev. 110, 120, 178 P.3d 154, 161 (2008).
 

 [18]
 

 Hiibel v. Dist. Ct.,
 
 118 Nev. 868, 871-72, 59 P.3d 1201, 1204 (2002),
 
 affirmed by Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.,
 
 542 U.S. 177, 191 (2004).
 

 [19]
 

 Id.
 
 at 872, 59 P.3d at 1204.
 

 [20]
 

 Wyatt v. State,
 
 77 Nev. 490, 501, 367 P.2d 104, 110 (1961) (citing
 
 Mapp v. Ohio,
 
 367 U.S. 643, 655 (1961) (“[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.”)).
 

 [21]
 

 See Wong Sun,
 
 371 U.S. at 484-85;
 
 Arterburn
 
 v.
 
 State,
 
 111 Nev. 1121, 1126-27, 901 P.2d 668, 671 (1995) (holding that the defendant’s confession and marijuana seized from the defendant should have been suppressed because the initial arrest was in violation of the Fourth Amendment).
 

 [22]
 

 Miranda v. Arizona,
 
 384 U.S. 436, 444, 478 (1966);
 
 Rosky
 
 v.
 
 State,
 
 121 Nev. 184, 191, 111 P.3d 690, 695 (2005).
 

 [23]
 

 See Florida
 
 v.
 
 Bostick,
 
 501 U.S. 429, 439 (1991) (“[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter.”);
 
 California v. Hodari D.,
 
 499 U.S. 621 (1991) (applying the same seizure principles to a minor);
 
 Miranda,
 
 384 U.S. at 478 (“Any statement given freely and voluntarily without any compelling influences is, of course,
 
 *445
 
 admissible in evidence.”);
 
 Stevenson v. State,
 
 114 Nev. 674, 678-79, 961 P.2d 137, 139-40 (1998) (affirming the district court’s denial of a suppression motion where no seizure occurred and the defendant consented to a search).
 

 [24]
 

 Bostick,
 
 501 U.S. at 439-40;
 
 Stevenson,
 
 114 Nev. at 678-79, 961 P.2d at 140.
 

 [25]
 

 Miranda,
 
 384 U.S. at 444, 478;
 
 Rosky,
 
 121 Nev. at 191, 111 P.3d at 695.
 

 [26]
 

 Somee asserts that field interviews to investigate gang activity are plagued with constitutional hazards including racial profiling and police coercion, citing
 
 People
 
 v.
 
 Rodriguez,
 
 26 Cal. Rptr. 2d 660 (Ct. App. 1993). While we recognize that a field interview, as an investigative tool, may be misused or abused, we believe that the application of Fourth and Fifth Amendment jurisprudence, and the accompanying exclusionary rule, is sufficient to discourage police misconduct.
 

 [27]
 

 Petrocelli
 
 v.
 
 State,
 
 101 Nev. 46, 692 P.2d 503 (1985),
 
 modified by Sonner
 
 v.
 
 State,
 
 112 Nev. 1328, 1333-34, 930 P.2d 707, 711-12 (1996),
 
 and superseded in part by statute as stated in Thomas
 
 v.
 
 State,
 
 120 Nev. 37, 45, 83 P.3d 818, 823 (2004).
 

 [28]
 

 Braunstein v. State,
 
 118 Nev. 68, 72, 40 P.3d 413, 416 (2002).
 

 [29]
 

 NRS 48.045.