An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROTZILYN MERCHELLE MITCHELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59749

**FILED**

SEP 1 8 2013



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of five counts of conspiracy to obtain money under false pretenses, two counts of attempt to obtain money under false pretenses, and one count each of obtaining money under false pretenses from a victim 60 years of age or older, obtaining money under false pretenses, first-degree kidnapping of a victim 60 years of age or older, battery with the intent to commit a crime against a victim 60 years of age or older, and robbery of a victim 60 years of age or older. Eighth Judicial District Court, Clark County; David B. Barker, Judge. Appellant Rotzilyn Merchelle Mitchell raises six claims of error.

First, Mitchell contends that there was insufficient evidence to support her convictions for conspiracy to obtain money under false pretenses, attempt to obtain money under false pretenses, first-degree kidnapping of a victim 60 years of age or older, battery with the intent to commit a crime against a victim 60 years of age or older, and robbery of a victim 60 years of age or older, all of which were committed against the same 66-year-old victim of Korean descent. Specifically, Mitchell argues that there was insufficient evidence of identity because the Korean victim did not identify Mitchell when she testified in court and could not pick

13-27699

Mitchell out of a photo array. Mitchell also argues that these convictions cannot be sustained because the victim did not testify that she was kidnapped, Mitchell's accomplice, her husband, alone was responsible for taking the victim's money, and there was no evidence of a mutual agreement supporting a conspiracy charge. We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Here, the Korean victim testified that she was approached in a grocery store parking lot by an African-American woman with a three-inch scar on her neck who identified herself as Diana. Diana told the victim that she had found a zippered wallet in front of the victim's car and wanted the victim to be a witness. According to Diana there was $150,000 in the wallet. Moments later, the two women were approached by an African-American man who identified himself as David. Diana opened up the wallet and showed the victim and David a two-inch stack of hundred dollar bills with $150,000 written on a piece of paper in the wallet. David then drove the two women in a white four-door Cadillac to a nearby office building where Diana told the victim she was going inside to talk to her lawyer about the money. When Diana returned, she told the victim that the lawyer said they could keep the money and split the proceeds if they each paid a fee of $8,000 which would be returned to them an hour later. After the victim withdrew $8,000 from her bank and returned to the car, Diana and David asked to see the money. When the victim showed them the cash, David tried to grab the envelope. The victim started to scream. When the victim held on to the money, David struck her in the face

breaking her glasses and cutting the left side of her face. David then grabbed the money and tried to push the victim out of the car. The victim resisted. Diana exited the back seat and pulled the victim out of the passenger door onto the ground and the two perpetrators sped off in the white Cadillac.

At trial, the victim was unable to identify Mitchell from a photo array or make an in-court identification. She testified that she voluntarily got into the car to visit the lawyer's office because the woman told her she had to come with her to be a witness. She also testified that the woman who pulled her out of the car never pushed her into the car. Another witness testified that he called 9-1-1 on the same day as the robbery after he was walking in front of an office building and heard a woman yelling for help. He saw a passenger who appeared to be trying to get out of a white four-door Cadillac. A man in the driver's seat yelled "close the door" and an African-American woman jumped out of the back seat and slammed the front passenger door closed before the car took off at a high rate of speed. Several still pictures were captured by the office building's camera and admitted into evidence.

When Mitchell was arrested one year after the Korean victim was robbed, Mitchell identified herself as Diane and officers discovered a zippered wallet containing a bundle of real and fake currency and a note indicating that the wallet contained $150,000 in her possession. Among other things, the note said, "see you in Cuba."

A second female victim, who did make an in-court identification of Mitchell, testified that the African-American woman who attempted to obtain her money under false pretenses, identified herself as Cynthia, was accompanied by an African-American man who was driving

SUPREME COURT
OF
NEVADA

(O) 1947A

3

a white four-door car, showed the victim a huge amount of money in a zippered wallet along with a note, took the victim to an office building where she claimed to meet with a lawyer, and coerced the victim into giving her $234. This incident occurred two months after the Korean victim was robbed.

A third victim, who also made an in-court identification of Mitchell, testified that the African-American woman who attempted to obtain her money under false pretenses was accompanied by an African-American man, showed the victim a lot of money in a zippered wallet, and offered to take the victim to an office building where she claimed to know a lawyer. This incident occurred eleven months after the Korean victim was robbed.

A fourth victim, who identified Mitchell from a photograph but could not make an in-court identification, testified that the African-American woman who obtained her money under false pretenses, had a scar on her neck, identified herself as Diane, was accompanied by an African-American man who was driving a gray four-door car, showed the victim $150,000 in a zippered wallet along with a note that said "see you in Cuba," took the victim to an office building where she claimed to meet with a lawyer, and coerced the victim into giving her $1500. This incident occurred one month before the Korean victim was robbed.

A fifth victim, who identified Mitchell from a photograph but could not make an in-court identification, testified that the African-American woman who obtained her money under false pretenses, identified herself as Diane, was accompanied by an African-American man who was driving a white car, showed the victim $6,000 in a zippered wallet, took the victim to an office building where she claimed to meet

with a lawyer, and coerced the victim into giving her $600. This incident occurred five months after the Korean victim was robbed.

We conclude that a rational juror could infer from these circumstances that Mitchell was the same African-American woman with a scar on her neck who was responsible for robbing and battering the Korean victim and conspired and attempted to obtain her money under false pretenses. *See* NRS 193.167; NRS 193.330; NRS 195.020; NRS 199.480(1)(a); NRS 200.400; NRS 205.380; *Garner v. State,* 116 Nev. 770, 780, 6 P.3d 1013, 1020 (2000) (noting that conspiracy "is usually established by inference from the parties' conduct"), *overruled on other grounds by Sharma v. State*, 118 Nev. 648, 56 P.3d 868 (2002). We further conclude that a rational juror could infer from the trial testimony that Mitchell committed kidnapping for the purpose of committing robbery. *See* NRS 200.310(1). Although the Korean victim testified that she voluntarily entered Mitchell's vehicle and Mitchell did not push her into the car, she also testified that she almost lost consciousness after Mitchell's accomplice struck her in the face. "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses" and the bystander's testimony that he saw Mitchell prevent the victim from exiting the vehicle by slamming the passenger door closed is sufficient to sustain a conviction for kidnapping in the first-degree. *McNair,* 108 Nev. at 56, 825 P.2d at 573. The verdict will not be disturbed on appeal, where, as here, substantial evidence supports these convictions. *Bolden v. State,* 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also Buchanan v. State,* 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) (circumstantial evidence alone may sustain a conviction).

Second, Mitchell contends that the district court erred by denying her motion in limine to exclude evidence of an uncharged attempt to obtain money under false pretenses. We review the district court's decision for a manifest abuse of discretion. *Bigpond v. State*, 128 Nev. ___, ___, 270 P.3d 1244, 1250 (2012). Before denying Mitchell's motion, the district court held a hearing and concluded that the circumstances surrounding Mitchell's arrest and the incriminating evidence related to the charged crimes discovered in a search incident to that arrest was relevant to show Mitchell's identity and her common scheme or plan to obtain money under false pretenses. Although Mitchell claims that identity was not at issue in this case, this claim is undermined by Mitchell's separate claim that she should be acquitted of six felonies because the Korean victim failed to sufficiently identify her and we conclude that identity was a relevant nonpropensity purpose. And while the nonpropensity purpose of "plan" may have been better described by the district court as "modus operandi" evidence in this case, *see* David P. Leonard, *The New Wigmore: A Treatise on Evidence: Evidence of Other Misconduct and Similar Events* § 13.5 (2009 & Supp. 2013) (distinguishing between the modus-operandi theory and the common-scheme-or-plan theory), Mitchell has failed to show that she was unfairly prejudiced by the inclusion of this additional nonpropensity purpose in the instructions to the jury. The jury was given a limiting instruction before each of the three police officers described the circumstances surrounding Mitchell's arrest which explained to the jury that the evidence could not be considered to prove Mitchell's propensity to commit the charged crimes. "A jury is presumed to follow its instructions." *Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001) (internal quotation marks omitted).

Furthermore, the probative value of Mitchell's uncharged acts was not outweighed by the danger of unfair prejudice and we conclude that the district court did not abuse its discretion by denying Mitchell's motion.

Third, Mitchell contends that the district court erred by denying her motion to suppress the evidence obtained in a search incident to her arrest because officers did not have a warrant or probable cause to make an arrest. The parties do not dispute the facts and circumstances preceding Mitchell's arrest and we review the legal consequences of those facts and circumstances de novo. *Somee v. State*, 124 Nev. 434, 441, 187 P.3d 152, 157-58 (2008). Warrantless public arrests can be based on probable cause alone. *United States v. Watson*, 423 U.S. 411, 414-24 (1976). "There is probable cause for a warrantless arrest and a search incident to that arrest if, under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir. 1984). If the officer has probable cause to believe a felony has been committed, he or she may arrest the person regardless of whether the felony was committed in his or her presence. NRS 171.124(1)(b). Prior to the surveillance of Mitchell, the totality of facts and circumstances known to the arresting officers was more than sufficient for a prudent person to conclude that there was a fair probability that Mitchell committed a felony. The district court did not err by denying Mitchell's motion to suppress.

Fourth, Mitchell contends that her convictions for conspiracy to obtain money under false pretenses and attempt to obtain money under false pretenses are redundant and violate the Double Jeopardy Clause because they punish the same conduct. Mitchell concedes, however, that

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*Blockburger v. United States*, 284 U.S. 299 (1932), and this court's opinion in *Jackson v. State*, 128 Nev. ___, 291 P.3d 1274 (2012), negates her argument. We agree. *See also United States v. Savaiano*, 843 F.2d 1280, 1292 (10th Cir. 1988). Therefore, Mitchell is not entitled to relief on this claim.

Fifth, Mitchell contends that the district court abused its discretion at sentencing, *see Parrish v. State*, 116 Nev. 982, 988-89, 12 P.3d 953, 957 (2000), and imposed a disproportionate sentence constituting a cruel and/or unusual punishment in violation of the United States and Nevada constitutions, *see* U.S. Const. amend. VIII; Nev. Const. art. 1, § 6. This court will not disturb a district court's sentencing determination absent an abuse of discretion. *Randell v. State*, 109 Nev. 5, 8, 846 P.3d 278, 280 (1993). Mitchell has not alleged that the district court relied solely on impalpable or highly suspect evidence or that the sentencing statute is unconstitutional. *See Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 489-90 (2009). Mitchell's seven life prison terms, two of which run consecutively, each carrying a minimum parole eligibility after ten years, fall within the parameters provided by the relevant statute, *see* NRS 207.010(1)(b)(2), and the sentence is not so unreasonably disproportionate to the gravity of the offenses and Mitchell's history of recidivism as to shock the conscience, *see Culverson v. State*, 95 Nev. 433, 435, 596 P.3d 220, 221-22 (1979); *see also Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion); *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion). Therefore, we conclude that the district court did not abuse its discretion at sentencing and Mitchell's sentence did not amount to cruel and/or unusual punishment.

Finally, Mitchell contends that the effect of cumulative error warrants reversal of her conviction. Because we have found no error, there are no errors to cumulate. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Gibbons

_____, J.          _____, J.
Douglas                                              Saitta


cc:     Hon. David B. Barker, District Judge
        Sterling Law, LLC
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk