944 P.2d 791 (1997)
Ruben BARRIOS-LOMELI, Appellant,
v.
The STATE of Nevada, Respondent.
No. 27484.
Supreme Court of Nevada.
August 28, 1997.
Steven G. McGuire, State Public Defender, and James P. Logan, Chief Appellate Deputy Public Defender and Timothy O'Toole, Appellate Deputy Public Defender, Carson City, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Noel S. Waters, District Attorney, and John C. Eck, Deputy District Attorney, Carson City, for Respondent.

OPINION
PER CURIAM:
On March 21, 1995, Adrian Obeso-Hernandez ("Hernandez") was arrested for the sale of a controlled substance. He subsequently agreed to cooperate with the Tri-Net Narcotics Task Force ("Tri-Net")[1] and provide "substantial assistance" in arresting other narcotic traffickers. In exchange for his cooperation, Hernandez would receive favorable consideration at his sentencing hearing.
On March 23, 1995, at 1:30 p.m., Hernandez telephoned appellant Ruben Barrios-Lomeli ("Lomeli") at his home in Stockton, California. Hernandez requested that Lomeli deliver four ounces of methamphetamine to him in Carson City.[2] Lomeli agreed and informed Hernandez that he would drive to Carson City that day and telephone him when he arrived in the WalMart parking lot around 7:30 p.m. Lomeli further informed Hernandez that he would be driving a red sedan with California license plates. Hernandez described Lomeli as a short, heavy-set, five-foot-tall, 160-pound Hispanic male with short dark hair in his early to mid-twenties.
*792 At 6:30 p.m. on March 23, 1995, Tri-Net forces staked out the WalMart parking lot. After waiting an hour and one-half, Lomeli had not yet arrived. At 8 p.m., Hernandez received a phone call at his home from Lomeli who explained that he could not cross the Sierras because of inclement weather. Hernandez then relayed this message to the police and the surveillance was canceled.
The next day, March 24, 1995, at 10:30 a.m., Hernandez advised the police that Lomeli had just called him at home and stated that he would be arriving in the Carson City area within a few hours. Approximately ten officers were dispatched to the WalMart parking lot where they awaited Lomeli's arrival.
At 12:30 p.m., a red Monte Carlo sedan with California license plates pulled into the WalMart parking lot. Tri-Net agents immediately ran a check of the vehicle and discovered it was registered to Sylvia Catalan of Stockton, California. The driver of the vehicle matched the description of Lomeli. Hernandez was then brought to WalMart for identification purposes.
While the police waited for Hernandez to arrive, the driver of the red sedan entered WalMart with a female passenger and infant. Once inside, the driver immediately used the telephone. The driver then ordered lunch at the McDonald's restaurant located inside WalMart.
The driver had been sitting in the McDonald's eating area with his female companion and the infant for fifteen minutes when four police officers approached and requested identification. The driver produced a California identification card with the name "Ruben Barrios-Lomeli." The officers then requested that Lomeli exit the store with them to discuss the possible delivery of methamphetamine. At that point, the officers were detaining Lomeli "for further felony investigation."
Accordingly, Lomeli left WalMart with the officers. By that time, Hernandez had arrived at the WalMart parking lot in an undercover police vehicle with tinted windows. As Lomeli walked outside, Hernandez positively identified Lomeli as his source for methamphetamines. Police then conducted a pat-down search of Lomeli but found nothing. Although Tri-Net agents told Lomeli to identify his vehicle, he did not give consent for its search. Furthermore, the police had no search warrant nor was there any contraband in plain view. However, the police thoroughly searched the vehicle and discovered four ounces of methamphetamine behind the dashboard and removable stereo. Thereafter, Lomeli was arrested for trafficking in a controlled substance.
Following a preliminary hearing, Lomeli filed a written motion to suppress all evidence seized from the warrantless search of his vehicle. Lomeli argued that the police should have obtained an anticipatory search warrant. Additionally, Lomeli contended that the search was unconstitutional because no exigency existed which justified circumventing the judicial mechanisms for obtaining a warrant. Respondent State of Nevada ("State") argued that the warrantless search was lawful under United States Supreme Court case law and it was not reasonably practicable to obtain an anticipatory warrant.
On June 8, 1995, the district court conducted a hearing on the motion to suppress and denied the motion. The basis of the lower court's ruling was that probable cause existed to search the vehicle. However, the trial court expressed no opinion about facts giving rise to exigent circumstances.
Lomeli then entered into a plea bargain, whereby he pleaded guilty to the felony charge, but reserved his right to appeal the lower court's ruling on the motion to suppress. In exchange, the State recommended the minimum sentence of ten years.

Whether the State should have obtained an anticipatory search warrant
In Derouen v. Sheriff, Washoe County, 85 Nev. 637, 640 n. 3, 461 P.2d 865, 867 n. 3 (1969), this court recognized the well-settled principle that search warrants for automobiles should be obtained whenever reasonably practicable. In State v. Parent, 110 Nev. 114, 867 P.2d 1143 (1994), this court, for the first and only time to date, expressly approved the concept of anticipatory search warrants. In doing so, this court stated:

*793 "[T]he purposes of the fourth amendment are best served by permitting government agents to obtain warrants in advance if they can show probable cause to believe that the contraband will be located on the premises at the time that the search takes place.... Anticipatory search warrants... in the proper circumstances, may be an effective tool, both to fight criminal activity, and to protect individual fourth amendment rights."
Parent, 110 Nev. at 117, 867 P.2d at 1145 (quoting United States v. Garcia, 882 F.2d 699, 703 (2nd Cir.), cert. denied sub nom., Grant v. United States, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989)).
Taking the "warrants-when-practicable" policy in conjunction with this court's approved practice of anticipatory warrants, Lomeli argues that the Tri-Net officers should have obtained an anticipatory search warrant prior to searching his car. The State responds that (1) an anticipatory search warrant never would have issued in this matter because probable cause could not be supported solely by an informant's testimony, and (2) federal and state law simply does not require obtaining an anticipatory search warrant.
We conclude that the State's first counter-argument, that probable cause did not exist to support an anticipatory warrant, is without merit. In Parent, the police received an anonymous call that Parent would be arriving at the airport with cocaine concealed in a baby powder bottle in his luggage. Parent, 110 Nev. at 115, 867 P.2d at 1143-44. The anonymous informant gave the police a physical description of Parent, the date and airline upon which Parent would arrive, his social security number, FBI number, and date of birth. Based on this information, a detective was able to confirm Parent's arrival on the date and airline. A search warrant was issued.
Here, Hernandez gave the police a detailed physical description of Lomeli, the model (sedan) and color of the car he would be driving, and the time and place of his arrival. Additionally, the accuracy of the information supplied by Hernandez had a heightened degree of credibility due to Hernandez's familiarity with Lomeli through prior drug dealings and Hernandez stood to benefit much from his "substantial assistance." Finally, unlike the informant in Parent, Hernandez was not anonymous to the police. Therefore, we conclude that probable cause existed to support an anticipatory search warrant.
The State asserts that even if probable cause existed to support an anticipatory search warrant, neither federal nor state law requires police to do so. Although the State is correct in its assertion, its position does not comport with the strong public policy favoring warrants when practicable. However, Lomeli fails to cite any authority, binding or otherwise, which supports the proposition that failure to obtain an anticipatory warrant supported by probable cause triggers the prophylactic remedy of suppression. Cunningham v. State, 94 Nev. 128, 130, 575 P.2d 936, 937 (1978) (declining to entertain novel propositions of law unsupported by relevant authority).
Further, if this court fashioned such a bright line rule, we would place an overwhelming burden on law enforcement and increase the likelihood of abuse in obtaining warrants. See United States v. Garcia, 882 F.2d 699, 703-04 (2nd Cir.1989). This we decline to do. Accordingly, we conclude that although the State could have obtained an anticipatory search warrant, its failure to do so does not require suppression of the seized evidence.

Whether exigent circumstances existed to justify a warrantless search of Lomeli's vehicle
Warrantless searches "are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). In Carroll v. United States, 267 U.S. 132, 151-52, 45 S.Ct. 280, 284-85, 69 L.Ed. 543 (1925), the Supreme Court carved out one of those exceptions by holding that warrantless searches of automobiles were permitted when two criteria were satisfied: (1) the police had probable cause to *794 believe that evidence of a crime was present in the vehicle, and (2) exigent circumstances existed to believe the car would be removed from the area.
The State correctly notes, and Lomeli concedes, that the United States Supreme Court abandoned the exigency requirement in California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). However, Nevada, like other state high courts,[3] continues to adhere to the requirement that exigent circumstances must be present to justify a warrantless automobile search. State v. Harnisch, 113 Nev. 214, 222, 931 P.2d 1359, 1365 (1997).
As recently as January 1997, this court held in Harnisch that exigent circumstances did not exist to justify a warrantless search of an automobile because "the car was not readily movable." Harnisch, 113 Nev. at 223, 931 P.2d at 1365. Thus, it is clear that Nevada still requires a showing of exigent circumstances. Therefore, in the present matter, the lower court's reliance exclusively on federal law to uphold the warrantless search was error. Michigan v. Long, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476-77, 77 L.Ed.2d 1201 (1983); Bowyer v. Taack, 107 Nev. 625, 628-29, 817 P.2d 1176, 1178 (1991).
Nevertheless, this court may still uphold the warrantless search of Lomeli's car if exigent circumstances are present in the record. Thus, the dispositive issue in this case is whether the narcotics, located in Lomeli's car, were evanescent when his vehicle was searched. In other words, were the drugs likely to disappear before a warrant could be secured.
The only offer of exigency advanced by the State was that Lomeli's girlfriend could have driven the vehicle out of the WalMart parking lot. In contrast, Lomeli argues that the vehicle, like himself, was seized for further felony investigation.
NRS 171.123(3) states that any peace officer lawfully detaining an individual under this statute may do so "only to ascertain his identity and the suspicious circumstances surrounding his presence abroad." (Emphasis added.) In State v. Wright, 104 Nev. 521, 523, 763 P.2d 49, 50 (1988), this court recognized that a vehicle may be detained if the officer reasonably believes it is involved in criminal activity. Furthermore, the Nevada Attorney General advocates that a police officer may detain individuals while a search warrant is secured. Nev.Op.Atty.Gen. No. 88-3 (3-29-1988).
In this case, it is undisputed that Lomeli was being detained for further felony investigation. When the pat-down search of Lomeli failed to reveal the presence of narcotics, the police immediately focused on the vehicle. Pursuant to NRS 171.123 and Wright, the police were justified in "detaining" Lomeli and his automobile for a maximum of sixty minutes. Thus, no individual could get in the car, drive away, and carry off the narcotics.
Under these circumstances, we conclude that no exigency existed which justified a warrantless search of Lomeli's car. The one-hour statutory period prescribed in NRS 171.123(4) should have provided the Tri-Net agents with an opportunity to procure a telephonic warrant pursuant to NRS 179.045.[4] If, however, one hour would have been insufficient to secure a warrant, an exigency may have arisen. Nevertheless, this issue is never reached because it is undisputed that Tri-Net agents did not even attempt to attain a search warrant. Because this omission is wholly inconsistent with the well-grounded policy encouraging warrants when feasible, we cannot condone such behavior. Therefore, we conclude that the trial court erred in failing to grant Lomeli's motion to suppress.
Accordingly, we remand this matter to the district court for further proceedings not inconsistent with this opinion.
MAUPIN, Justice, dissenting:
I agree that the failure to obtain an anticipatory search warrant did not require suppression *795 of the evidence seized in this case. I do not agree, however, that the evidence should have been suppressed for lack of exigent circumstances.
NOTES
[1] Tri-Net is a state and local narcotics task force serving Lyon County, Douglas County, and the Carson City area.
[2] Hernandez was familiar with Lomeli's involvement in drug sales through prior transactions.
[3] See, e.g., State v. Miller, 227 Conn. 363, 630 A.2d 1315, 1322-26 (Conn.1993); State v. Kock, 302 Or. 29, 725 P.2d 1285, 1287 (1986); State v. Larocco, 794 P.2d 460, 469 (Utah 1990); and State v. Patterson, 112 Wash.2d 731, 774 P.2d 10, 11-12 (1989).
[4] NRS 179.045(2) provides in relevant part: "In lieu of the affidavit required by subsection 1, the magistrate may take an oral statement given under oath...." (Emphasis added.)