THE STATE OF NEVADA, APPELLANT, *v.*
JETHRO RAY LLOYD, RESPONDENT.

No. 56706

October 31, 2013 312 P.3d 467

*Catherine Cortez Masto*, Attorney General, Carson City; *Mark D. Torvinen*, District Attorney, and *Robert J. Lowe*, Deputy District Attorney, Elko County, for Appellant.

*Frederick B. Lee, Jr.*, Public Defender, and *Roger H. Stewart*, Deputy Public Defender, Elko County, for Respondent.

Before the Court EN BANC.[1]

## OPINION

By the Court, PICKERING, C.J.:

A highway patrol officer saw respondent Jethro Lloyd run a red light and followed him into a shopping center parking lot to issue him a ticket. While the ticket was being processed, a drug detection dog was summoned. The dog alerted for the presence of drugs in Lloyd's car. This led to a warrantless search that uncovered illegal drugs. Lloyd was arrested and charged with trafficking, possession for sale, and possession of schedule I and II controlled substances.

Lloyd moved to suppress, arguing that the Fourth Amendment to the United States Constitution and Article 1, Section 18 of the Nevada Constitution prohibited the warrantless search. The district court granted Lloyd's motion. It determined that the drug dog's alert provided probable cause to search Lloyd's car for contraband. But it concluded that, for a warrantless automobile search to pass

[1]Pursuant to IOP Rule 13(b), this matter was transferred after oral argument before a three-judge panel to the en banc court.

muster under Nevada law, both probable cause and exigency, beyond that inherent in a car's ready mobility, must be shown. Since the State showed nothing in the way of exigent circumstances beyond the car's mobility, the district court invalidated the search and suppressed the drug evidence.

Consistent with federal constitutional law, we hold that exigency is not a separate requirement of the automobile exception to the constitutional warrant requirement. Thus, because the drug detection dog's alert gave the officers probable cause to search Lloyd's car, which was parked in a public place and readily mobile, we reverse.

## I.

The essential facts were established through officer testimony and videotape from the patrol car's camera. Trooper Richard T. Pickers of the Nevada Highway Patrol stopped respondent Jethro Lloyd in a shopping center parking lot in Elko, Nevada. It was a Sunday morning, and the courts were closed. The trooper saw Lloyd make a right turn at a red light without coming to a complete stop. By the time Trooper Pickers activated his lights and caught up to him, Lloyd had parked and gotten out of his car to go into Starbucks.

Lloyd denied running a red light. Still, he cooperated with the trooper's request that he produce his driver's license, insurance, and registration. When Trooper Pickers called dispatch to report the traffic stop and confirm Lloyd's paperwork, he asked dispatch to send a drug detection dog and handler team. The K9 unit arrived a few minutes later, before Trooper Pickers finished processing the traffic violation. Nothing suggests that the dog sniff prolonged the traffic stop.[2]

The dog alerted to the presence of drugs in Lloyd's car. Based on the dog's alert and without getting a warrant, Trooper Pickers proceeded to search the vehicle. On opening Lloyd's car door, Trooper Pickers remarked that he smelled an illegal substance. He

---

[2]The district court found that, "The stop up to and including the arrival of the drug dog and the sniff, did not appreciably lengthen the purpose of the original stop, which was for the possible issuance of a traffic ticket for running a red light," and "the dog sniff occurred prior to the conclusion of the traffic stop." This case thus differs from *State v. Beckman*, 129 Nev. 481, 305 P.3d 912 (2013), where Trooper Pickers unlawfully detained a car and driver beyond the time needed to process the traffic stop, to give a dog and handler team time to arrive. *See Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) (a dog sniff during a lawful traffic stop does not violate the Constitution so long as the sniff does not prolong the length of the stop); *Gama v. State*, 112 Nev. 833, 837-38, 920 P.2d 1010, 1013 (1996) (same).

arrested Lloyd, handcuffed him, and secured him in the back of the patrol vehicle.

The vehicle search yielded psilocybin mushrooms and seven pounds of marijuana. Trooper Pickers transported Lloyd to the police station, and the State charged him with several drug-related offenses. It is unclear what became of Lloyd's vehicle after the search.

## II.

A motion to suppress presents mixed questions of law and fact. *State v. Beckman*, 129 Nev. at 485, 305 P.3d at 916. On appeal from an order granting a motion to suppress, "[t]his court reviews findings of fact for clear error, but the legal consequences of those facts involve questions of law that we review de novo." *Id.* at 486, 305 P.3d at 916. A district court's legal conclusion regarding the constitutionality of a challenged search receives de novo review. *See United States v. Navas*, 597 F.3d 492, 496 (2d Cir. 2010).

### A.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," and that "no Warrants shall issue, but upon probable cause." Article I, Section 18 of the Nevada Constitution similarly provides, "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause . . . ." Under these cognate provisions of our federal and state constitutions, warrantless searches "are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *Hughes v. State*, 116 Nev. 975, 979, 12 P.3d 948, 951 (2000). One such exception is the "automobile exception." *Id.*

The automobile exception was first recognized in *Carroll v. United States*, 267 U.S. 132 (1925). A Prohibition-era case, *Carroll* approved a warrantless automobile search where the police had probable cause to believe the vehicle contained alcohol being transported in violation of the National Prohibition Act. In an extensive opinion, the Supreme Court ruled:

> On reason and authority *the true rule is that if the search and seizure without a warrant are made upon probable cause*, that is, upon a belief, reasonably arising out of circumstances

> known to the seizing officer, *that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.*

*Id.* at 149 (emphasis added). The Supreme Court justified this rule by the inherent mobility of automobiles, which often makes it impractical to obtain a search warrant before the contraband is put out of reach:

> . . . the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

*Id.* at 153. Later cases added a second justification for the automobile exception: A person has a lower expectation of privacy in a vehicle than in a home or office. *See California v. Carney*, 471 U.S. 386, 391 (1985).

*Chambers v. Maroney*, 399 U.S. 42 (1970), upheld a warrantless automobile search that occurred after the accused had been taken into custody and his car driven to the police station. *Id.* at 47. Differentiating vehicles from houses because of their mobility, the Supreme Court explained that the circumstances that furnish probable cause to search a vehicle are often unforeseeable and the opportunity to conduct a search fleeting. *Id.* at 48, 50-51. So, for law enforcement to search a vehicle effectively, they must either seize the vehicle while awaiting a warrant or search the vehicle without a warrant. *Id.* at 51. The Court found no constitutional difference "between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate [for a warrant] and on the other hand carrying out an immediate search without a warrant." *Id.* at 52. "Given probable cause" to believe the vehicle contains contraband, "either course is reasonable." *Id.*

As *Chambers* suggests, *Carroll* did not establish exigency as a separate requirement of the automobile exception. To be sure, *Carroll* cites exigency as a reason for its holding, 267 U.S. at 153, but it is the exigency inherent in an automobile's ready mobility that, with probable cause, justifies a warrantless automobile search. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (describing *Carroll* as "based on the automobile's 'ready mobility,' an exigency sufficient to excuse failure to obtain a search warrant

once probable cause to conduct the search is clear''). So long as the vehicle for which probable cause to search exists is readily mobile, the requisite exigency is conclusively presumed. *See Carney*, 471 U.S. at 391 (''The mobility of automobiles . . . 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible.' '' (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976))); *Navas*, 597 F.3d at 498-500; *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012).[3]

In 1999, in *Maryland v. Dyson*, the Supreme Court made this point unmistakably clear:

> [T]he automobile exception does not have a separate exigency requirement: ''If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.''

527 U.S. 465, 467 (1999) (second alteration in original) (quoting *Labron*, 518 U.S. at 940).

## B.

Nevada has historically followed ''the United States Supreme Court on most, if not all, of its interpretations and applications of the law governing searches and seizures.'' Thomas B. McAffee, John P. Lukens & Thaddeus J. Yurek III, *The Automobile Exception in Nevada: A Critique of the Harnisch Cases*, 8 Nev. L.J. 622, 630-31 (2008); *see Cortes v. State*, 127 Nev. 505, 515 n.7, 260 P.3d 184, 191 n.7 (2011). Initially, Nevada automobile-exception law conformed to this trend. Thus, in *Wright v. State*, 88 Nev. 460, 472, 499 P.2d 1216, 1224 (1972), we applied *Carroll* and *Chambers* to validate the warrantless search of a car parked in a motel parking lot where the police had probable cause to believe the car contained evidence of a crime. The car's inherent mobility—even though the defendant's ''arrest rendered [the car temporarily] nonmobile,'' *id.* at 471, 499 P.2d at 1224—satisfied *Carroll*'s ''standard of continuing 'exigency,' '' *id.*, such that probable cause to believe the car contained contraband or evidence of a crime justified the warrantless search, without more.

Twenty-five years after *Wright*, this court handed down three cases—*State v. Harnisch (Harnisch I)*, 113 Nev. 214, 931 P.2d

---

[3]Whether and how the automobile exception applies when the vehicle is parked on private, residential property is an open question, *see Robinson v. Cook*, 706 F.3d 25, 31 n.4 (1st Cir. 2013) (noting issue and collecting cases); *United States v. Goncalves*, 642 F.3d 245, 250 (1st Cir. 2011), implicating trespass as well as privacy search-and-seizure concerns, *cf. Florida v. Jardines*, 133 S. Ct. 1409 (2013); *Florida v. White*, 526 U.S. 559, 561 (1999); *State v. Hobbs*, 933 N.E.2d 1281, 1285-86 (Ind. 2010).

1359 (1997); *Barrios-Lomeli v. State*, 113 Nev. 952, 944 P.2d 791 (1997); and *State v. Harnisch (Harnisch II)*, 114 Nev. 225, 954 P.2d 1180 (1998)—that called a "startling halt" to Nevada's reliance on United States Supreme Court automobile-exception precedent. McAffee et al., *supra*, at 633.

The seminal case, *Harnisch I*, upheld the suppression of evidence found in a search of the trunk of a car parked in an apartment complex parking lot. The police had a warrant authorizing them to search the defendant's apartment, but the warrant did not mention the car. On appeal, the State argued that, since the car had been parked inside the apartment's curtilage, the warrant extended to the car. This court disagreed. Since "the State only raised the curtilage issue and did not raise [any] warrant exception issue," *Harnisch I*, 113 Nev. at 222 n.4, 931 P.2d at 1365 n.4, the State's appeal could and should have ended there. But we continued, sua sponte, to raise and reject the automobile exception as a possible alternative basis for the State's appeal. Citing *Carroll* and *Chambers*, but repudiating *Wright*'s accurate reading of them, we declared: "For the automobile exception to apply, two conditions must be present: first, there must be probable cause to believe that criminal evidence was located in the vehicle; and second, there must be exigent circumstances sufficient to dispense with the need for a warrant." *Id.* at 222-23, 931 P.2d at 1365. Since the police arrested the defendant when he arrived home, "the car was not readily movable by the defendant," defeating exigency. *Id.* at 223, 931 P.2d at 1365.

*Harnisch I* misstated federal law, which contains no separate exigency requirement. This we acknowledged in *Barrios-Lomeli*, 113 Nev. at 957, 944 P.2d at 794, and *Harnisch II*, 114 Nev. at 227, 954 P.2d at 1182. But "[r]ather than conceding its mistake and conforming to federal precedent, the court quickly changed direction." McAffee et al., *supra*, at 634.

*Harnisch II* denied rehearing in *Harnisch I*. In doing so, it recast *Harnisch I*'s flawed automobile-exception analysis as rooted in state, not federal, constitutional law: "[W]hile the federal constitution may not require the presence of exigent circumstances to validate a warrantless search of an automobile, Nevada may adhere to this requirement." 114 Nev. at 228, 954 P.2d at 1182. Continuing, *Harnisch II* held: "We now conclude . . . that the Nevada Constitution requires both probable cause and exigent circumstances in order to justify a warrantless search of a parked, immobile, unoccupied vehicle." *Id.* at 228-29, 954 P.2d at 1183.

Comparing *Barrios-Lomeli* with *Fletcher v. State*, 115 Nev. 425, 990 P.2d 192 (1999), demonstrates how little real guidance *Harnisch I* and *II* offer. In *Barrios-Lomeli*, we *invalidated* a warrantless search of a car that police officers, on a drug-buy stakeout, saw the defendant park in a shopping center parking lot. Probable

cause existed to believe the car contained contraband, 113 Nev. at 956, 944 P.2d at 793, and the car was fully operational, the defendant having driven there and gone inside for a McDonald's meal with his girlfriend. 113 Nev. at 954, 944 P.2d at 792. In *Fletcher*, by contrast, we *upheld* the warrantless search of a car that police officers pulled over on a roadside stop. As in *Barrios-Lomeli*, probable cause existed to believe the car contained contraband, and the car was fully operational, the defendant having been driving it before being pulled over. *Fletcher*, 115 Nev. at 430, 990 P.2d at 195. And in both, the police detained the defendant before conducting the warrantless vehicle search, *Barrios-Lomeli*, 113 Nev. at 958, 944 P.2d at 794; *Fletcher*, 115 Nev. at 430, 990 P.2d at 195, and the defendants' privacy interests were equivalent—Barrios-Lomeli's car was parked in a shopping center parking lot and Fletcher's by the side of a public road.

But we found insufficient exigent circumstances in *Barrios-Lomeli* and sufficient exigent circumstances in *Fletcher* to justify the warrantless automobile search. The difference? Fletcher's arrest left his vehicle "on the roadside subject to a police inventory search and later impoundment, creating what we conclude to be a sufficient exigent circumstance distinct from the parked, [immobile and] unoccupied vehicles" in *Harnisch* and *Barrios-Lomeli*. *Fletcher*, 115 Nev. at 430, 990 P.2d at 195; *see Hughes v. State*, 116 Nev. 975, 980, 12 P.3d 948, 951 (2000) ("*Fletcher* concerned a roadside search, as opposed to a search of a parked and unoccupied vehicle"). "It would be unreasonable to require the police to remain at the scene of the [roadside] arrest pending the arrival of a warrant." *Fletcher*, 115 Nev. at 430, 990 P.2d at 195. This begs the question, though, why it was reasonable to require the same commitment of time and resources to detain the defendant and his car in a shopping center parking lot pending arrival of a warrant in *Barrios-Lomeli*. *See Camacho v. State*, 119 Nev. 395, 75 P.3d 370 (2003) (no exigency where vehicle was parked in a grocery store parking lot, the vehicle's owner was detained, and police subsequently towed the vehicle).[4] *Hughes* suggests an additional distinction—that the pre-*Fletcher* cases (*Harnisch* and *Barrios-Lomeli*) arose "in the context of an automobile that was 'parked, immobile and unoccupied *at the time the police first en-*

---

[4]*Barrios-Lomeli* cites NRS 171.123, which authorizes the police to detain a person "whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime," but the detention may not last "longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes," and suggests that an hour's detention pending application for a warrant is preferable to an immediate search. 113 Nev. at 958, 944 P.2d at 794. *Chambers* rejects this logic, 399 U.S. at 51, and neither *Fletcher* nor *Hughes* alludes to this aspect of *Barrios-Lomeli*.

*countered it,'* " whereas in *Fletcher*, the police pulled the car over, *Hughes*, 116 Nev. at 980, 12 P.3d at 951 (quoting *Harnisch II*, 114 Nev. at 228, 954 P.2d at 1182)—but this is not true of *Barrios-Lomeli*, where the officers saw the defendant park and alight from his car, *Barrios-Lomeli*, 113 Nev. at 954, 944 P.2d at 792.

These cases draw perplexing distinctions that do not square with the reasons for them. To begin with, *Harnisch II*'s "parked, immobile and unoccupied" standard sounds like more than it is; when do the police search cars that are moving and occupied? A person's residence differs from a parking lot or public road, *see supra* note 3, but the latter two do not differ meaningfully from each other as to privacy or risk of pillage. If anything, a car left unattended in a shopping center parking lot probably carries a more immediate risk of loss of evidence than one left by the side of a road. And as the facts of this case illustrate—Trooper Pickers saw Lloyd run a red light and followed him into a shopping center parking lot—traffic stops occur both in parking lots and at the side of the road. Finally, what drew police attention to the defendant and his car in the first place may legitimately bear on the scope of the search incident to arrest when the automobile exception does not apply. *E.g.*, *Arizona v. Gant*, 556 U.S. 332, 350-51 (2009); *Camacho*, 119 Nev. at 399-400, 75 P.3d at 373-74. But where probable cause exists to believe the car contains contraband or evidence of a crime, a vehicle that is readily mobile presents the same risk of loss of evidence, or exigency, regardless of what caused it to stop. *See* McAffee et al., *supra*, at 646-48 (distinguishing "automobile exception" from "search incident" to arrest cases and suggesting that the *Harnisch* cases and their progeny conflate the two).

After analyzing our automobile-exception decisions, the district court did not—and likely could not—determine whether Lloyd's situation was more like *Harnisch*, *Barrios-Lomeli*, and other parked car cases, or *Fletcher* and *Hughes*, the roadside stop cases. After all, before the search, Lloyd alighted from his car to walk into Starbucks, but there was also evidence that Trooper Pickers was in pursuit when Lloyd pulled into the parking lot. If Lloyd had seen the trooper's lights before he pulled into the shopping center and stopped by the side of the road, *Fletcher* and *Hughes* would control. Yet, because Lloyd continued into the parking lot and got out of his car, *Barrios-Lomeli* seems more applicable. Even this is not clear, though, since *Barrios-Lomeli* suggests that if the police cannot get a warrant after 60 minutes of trying, sufficient exigency might materialize; here, since it was a Sunday with the courts

closed, it seems likely that waiting an hour would have accomplished little, if anything.

## C.

Nevada's automobile-exception caselaw has been criticized as "produc[ing] confusion, while doing little to enhance the protection of individual privacy interests." McAffee et al., *supra*, at 624. The criticism is fair. The constitutional protection in the federal automobile-exception caselaw lies in the requirement of probable cause to believe the vehicle contains contraband or evidence of a crime and the car's inherent mobility, not the peripheral factors identified in the *Harnisch* cases and their progeny. And the confusion in our caselaw not only makes it difficult for district courts to apply the law, it also makes it difficult for police to comply with the law in the field. *Compare* Barry Latzer, *The New Judicial Federalism and Criminal Justice: Two Problems and a Response*, 22 Rutgers L.J. 863, 865-66 (1991) (explaining that police confusion undermines laws meant to protect constitutional rights), *with Herring v. United States*, 555 U.S. 135, 144 (2009) (the exclusionary rule applies to "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," not every error that occurs).

In the 80 years since *Carroll* articulated the automobile exception, the Supreme Court "has slowly and cautiously developed this narrow exception to the warrant requirement into a balanced doctrine that protects privacy concerns while providing clear guidelines for effective law enforcement." McAffee et al., *supra*, at 623. Given that the Fourth Amendment and Article 1, Section 18 of the Nevada Constitution use virtually identical language, independently deriving a different formulation to protect the same liberty that the United States Constitution secures—and paying for that difference with confusing rules and unpredictable, oft-litigated results—cannot be justified. James A. Gardner, *State Constitutional Rights as Resistance to National Power: Toward a Functional Theory of State Constitutions*, 91 Geo. L.J. 1003, 1059 (2003); *see also* Latzer, *supra*, at 864 ("There is nothing improper in concluding that the Supreme Court's construction of similar text is sound."). We now conclude, as a number of sister states have, that our state constitution compels no different automobile exception to its warrant requirement than the Fourth Amendment does. *See, e.g., State v. Reyna*, 71 P.3d 366, 369 (Ariz. Ct. App. 2003) ("[T]he decisions concerning the scope of allowable vehicle

searches under the federal constitution are 'well on point' in deciding cases under the Arizona Constitution.''); *Berry v. State*, 843 A.2d 93, 113 (Md. Ct. Spec. App. 2004) (''We therefore apply the law as it exists in Maryland, which calls for us to follow in this case the Supreme Court's law on the subject.''); *Commonwealth v. Motta*, 676 N.E.2d 795, 800 (Mass. 1997) (''[W]e have also followed the Supreme Court in the area of the automobile exception.''); *State v. Zwicke*, 767 N.W.2d 869, 873 (N.D. 2009) (overruling prior case establishing exigency as a separate requirement of the automobile exception); *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009) (''the automobile exception does not require a separate finding of exigency under the Tennessee Constitution''); *McKenney v. State*, 165 P.3d 96, 99 (Wyo. 2007) (the automobile exception does not require a separate finding of exigency under Wyoming law); *see also* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.2(b), at 557 n.79 (4th ed. 2004) (listing jurisdictions that have dispensed with a separate exigency requirement for automobile searches based on probable cause).

We therefore disapprove of *Harnisch II* and its progeny to the extent that they establish exigency as a separate requirement of the automobile exception under the Nevada Constitution. We do not take this step lightly. ''[S]tare decisis plays a critical role in our jurisprudence,'' *Egan v. Chambers*, 129 Nev. 239, 243, 299 P.3d 364, 367 (2013), but ''when governing decisions prove to be 'unworkable or are badly reasoned,' they should be overruled.'' *Id.* (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)).

The dissent argues that allowing a police officer who has probable cause to search a readily mobile vehicle to do so without a warrant carries too great a cost. We cannot agree. Our Constitutions protect against unreasonable searches *and* seizures. U.S. Const. amend. IV; *see* Nev. Const. art. I, § 18. In the automobile-exception context, a police officer who has probable cause to believe the car contains contraband or evidence of a crime must either seize the vehicle while a warrant is sought or search the vehicle without a warrant. Given probable cause, either course is constitutionally reasonable. *See Maroney*, 399 U.S. at 52. ''Although it is elementary that states may provide greater protections than required by the federal Constitution, it is at least as fundamental that such decisions should be carefully reasoned and grounded in a strong public policy.'' McAffee et al., *supra*, at 648. *Harnisch I* and its confusing progeny do not meet these criteria.

"The federal automobile exception is rooted in good policy that balances private interests with the collective good, even as it provides law enforcement with clear and unequivocal guidelines for doing their jobs." *Id.*

## III.

The district court correctly found that the drug detection dog's alert gave the officers probable cause to believe controlled substances were in Lloyd's car. *Florida v. Harris*, 133 S. Ct. 1050, 1057 (2013) ("[A] court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."); *Latham v. State*, 97 Nev. 279, 280, 629 P.2d 780, 780-81 (1981) (upholding issuance of a search warrant based upon a trained drug detection dog's alert). The car was readily mobile and parked in a public place. Thus, the automobile exception to the warrant requirement imposed by the Fourth Amendment and the Nevada Constitution's cognate provision justified the search. We therefore reverse the district court's order granting Lloyd's motion to suppress and remand for further proceedings consistent with this opinion.

GIBBONS, HARDESTY, PARRAGUIRRE, and DOUGLAS, JJ., concur.

CHERRY, J., with whom SAITTA, J., agrees, dissenting:

I respectfully disagree with my colleagues in the majority. The majority holds that in order to have a warrantless search of an automobile, the police need only probable cause and need not show exigent circumstances. Their decision to reverse the trial court is not supported by our own stare decisis, *State v. Harnisch*, 114 Nev. 225, 228-29, 954 P.2d 1180, 1183 (1998), and is not consistent with but is in fact violative of Article 1, Section 18 of our Nevada Constitution, which prohibits unreasonable searches. In this day of modern technology and the allowance of telephonic search warrants, NRS 179.045(2), there is no plausible reason why an officer, after bringing a drug dog to establish probable cause, should fail to attempt to obtain a telephonic search warrant. More importantly, if the officer had attempted to obtain a telephonic search warrant, he would have been put under oath as to Lloyd's alleged traffic violation. The majority infers that the officer did not attempt to get a warrant because it was a Sunday morning, the courts were closed, and a telephonic warrant was not available. As a former district court judge who served in that capacity for eight years, I cannot accept that argument. There were many occasions when officers came to my home on a Saturday or Sunday to obtain

a search warrant, and even more on point are the numerous telephonic warrants that I granted in the middle of the night and at other "inconvenient" times. It is not out of the ordinary for police officers throughout our state to have the home phone numbers and cellular numbers of members of the judiciary.

I do not see the "confusion" that the majority alleges in Nevada's automobile exception caselaw, which requires probable cause and exigent circumstances for a warrantless search. I see no reason not to give the people of our state more protection from warrantless searches of automobiles than is afforded by the United States Constitution and existing federal caselaw.

In the instant case, the officer sees the respondent run a red light. The officer follows the respondent into a shopping center parking lot to issue him a ticket. The respondent is out of his car, and while the ticket is being processed, a drug dog is summoned in accordance with *State v. Beckman*, 129 Nev 481, 305 P.3d 912 (2013), and establishes probable cause. There is no sound reason at this stage that the officer could not telephone a judicial officer, be put under oath, and obtain a search warrant. This makes sense to me and should be the correct constitutional procedure in our state.

For the above reasons, I would affirm the trial court's grant of the motion to suppress evidence.