138 Nev., Advance Opinion 64

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
CHARLES WADE MCCALL,
Respondent.

No. 82640

FILED

SEP 22 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to suppress in a criminal prosecution. Eighth Judicial District Court, Clark County; Monica Trujillo, Judge.

*Affirmed in part, vacated in part, and remanded.*

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Alexander Chen and Jonathan E. VanBoskerck, Chief Deputy District Attorneys, and Austin C. Beaumont, Deputy District Attorney, Clark County,
for Appellant.

Sanft Law and Michael W. Sanft, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, HARDESTY, STIGLICH, and HERNDON, JJ.

*OPINION*

By the Court, STIGLICH, J.:

It is axiomatic that all persons shall be free from unreasonable, warrantless search and seizure. The United States Supreme Court has

carved out an exception to this general rule, however, permitting officers to conduct warrantless protective sweeps of areas for which they can articulate—and *only* when they can articulate—specific facts that lead them to believe the area being swept harbors an individual posing a danger to those on scene. Here, the district court granted a motion to suppress the evidence found as a result of and during a protective sweep, determining that the officers did not have an appropriate basis for the protective sweep and that the protective sweep was per se unconstitutional because it was not preceded by an arrest.

While we hold that a protective sweep does not require a prior arrest, we conclude that the district court correctly concluded that the search performed here was not a lawful protective sweep because it was not based on articulable facts supporting a reasonable belief that the premises harbored a dangerous individual. The district court's order, however, did not indicate the specific evidence that was improperly seized as a result of the protective sweep or as its fruit. Accordingly, we affirm in part, vacate in part, and remand for the district court to clarify the evidence that falls within the purview of the suppression order and which items were permissibly seized by law enforcement.

## BACKGROUND

Colette Winn resided in a home owned by respondent Charles Wade McCall. Winn was on probation and subject to a search clause that allowed officers to search her living quarters.[1] While McCall was an ex-felon, he was not on probation or parole.

---

[1]The search clause reads as follows: "You shall submit your person, place of residence, vehicle or areas under your control to search including electronic surveillance or monitoring of your location, at any time, with or

SUPREME COURT
OF
NEVADA

(O) 1947A

Winn's probation officer received an anonymous letter that claimed Winn was violating her probation. The letter focused primarily on Winn, alleging that she was "engaged in criminal activity with all ex felons," and warned that "[w]e[a]pons might be found, so please be careful." The letter also contended that Winn was "slinging drugs out of the far back bedroom." The letter only tangentially referred to McCall as a "convicted felon" but did not otherwise allege that McCall was engaged in any illegal activity or was dangerous. As a result of the anonymous letter, Winn was arrested at the probation office and interviewed. Winn told the officers that she lived with two other roommates, McCall and Mahatuhi Santos.[2] The officers researched McCall and learned he was an ex-felon and not subject to supervision. A total of eight officers, with Winn in tow, headed to Winn's home to search her place of residence pursuant to the search clause of the probation agreement.

This search devolved into a raid. For purposes of "containment," three officers flanked the sides and rear of the home. Meanwhile, four other officers in tactical gear banged on the door, let themselves into the home using a key code provided by Winn, and made entry with their guns drawn. Upon entry, they encountered both McCall, who had come out of his bedroom in the far back of the home with his dog, and Santos. The officers instructed McCall to reenter his bedroom and place his dog in the bathroom located therein. Even though McCall readily

_____

without a search warrant or warrant of arrest, for evidence of a crime or violation of probation by the Division of Parole and Probation or its agent."

[2]The officers did not ask Winn about the letter's contents, and the record does not indicate that Winn corroborated any of the letter's allegations beyond that she did not live alone.

complied with the officers' instruction, three officers followed McCall into his bedroom without his consent to sweep the room. Once inside McCall's room, one of the officers observed shotgun shells on McCall's dresser and detained McCall because they believed they would find guns as well. The officers read McCall his *Miranda* rights, after which McCall admitted to having firearms in the bedroom and identified them to the officers. The officers later admitted that they entered the home with the intention to search every room and that they conduct sweeps of the entirety of every home they enter as a matter of course even if they believe no one is present.

The officers contacted the Las Vegas Metropolitan Police Department, which obtained a search warrant to further search the house and McCall's vehicle. In McCall's bedroom and vehicle, officers found and seized three firearms, a credit card embosser, blank credit card stock, and several other items. McCall was charged with one count of establishing or possessing a financial forgery laboratory, three counts of ownership or possession of a firearm by a prohibited person, and five counts of possession of document or personal identifying information.

McCall filed a motion to suppress, arguing that the protective sweep violated the Fourth Amendment and that the derivative evidence seized was fruit of the poisonous tree. The State opposed, and the district court held an evidentiary hearing. At the hearing, the officers admitted that they went into the home with the intention of conducting a protective sweep of every room and that they would not have gone directly to Winn's room without conducting a full protective sweep of the house. One officer explained that "whenever we go into a residence, we clear the residence, we make sure that there are no other people there every time. . . . We do that every time."

The district court determined that "[t]here was no lawful basis for the protective sweep" for two reasons. First, there was no arrest preceding the protective sweep. Second, the officers "failed to testify to a reasonable belief based on specific and articulable facts that the area to be swept harbored an individual posing a danger to those on the scene." The district court concluded that there were no exigent circumstances warranting the protective sweep and thus suppressed the items seized during the sweep and those seized thereafter pursuant to the search warrant as fruit of the poisonous tree. The State appeals.

## DISCUSSION

*A protective sweep does not require a prior arrest*

The district court determined that a protective sweep requires a prior arrest. The State challenges this conclusion, arguing that law enforcement may conduct a protective sweep before an arrest and that the "reasonableness balancing required by the Fourth Amendment weighs towards allowing probation officers to conduct protective sweeps in non-arrest scenarios." We review this constitutional issue de novo. *State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013) ("A district court's legal conclusion regarding the constitutionality of a challenged search receives de novo review.").

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV; Nev. Const. art. 1, § 18; *see also Lloyd*, 129 Nev. at 743, 312 P.3d at 469. Warrantless searches are generally deemed unreasonable, with a few well-established exceptions. *Lloyd*, 129 Nev. at 743, 312 P.3d at 469. One of these exceptions is a protective sweep. *See Maryland v. Buie*, 494 U.S. 325, 327 (1990). A protective sweep is generally described as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police

officers or others." *Id.* Such a sweep is permissible under the Fourth Amendment if the officer held "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id.* (alteration, citation, and internal quotation marks omitted). The search is a cursory inspection of places where a person may be found and "lasts no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335-36.

The United States Supreme Court has not addressed whether a protective sweep requires a prior arrest. *See* Leslie A. O'Brien, Note, *Finding a Reasonable Approach to the Extension of the Protective Sweep Doctrine in Non-Arrest Situations*, 82 N.Y.U. L. Rev. 1139, 1140-41 (2007) (noting that the Supreme Court has yet to address this issue). So too did this court remain silent on this issue in *Hayes v. State*, 106 Nev. 543, 797 P.2d 962 (1990), *overruled on other grounds by Ryan v. Eighth Judicial Dist. Court*, 123 Nev. 419, 168 P.3d 703 (2007), the one case in which this court has applied *Buie*.[3]

---

[3]Likewise, when this court addressed protective sweeps before *Buie*, it did not settle whether a prior arrest was required. When this court considered a protective sweep in *Koza v. State*, the search was conducted after appellant had been arrested, and the court upheld the constitutionality of a protective sweep where the circumstances presented reasonable grounds by which officers could conclude that a search was necessary to prevent an urgent risk to their or others' lives. 100 Nev. 245, 250, 252-53, 681 P.2d 44, 46, 48-49 (1984) (interpreting the protective sweep under the emergency exception to the Fourth Amendment warrant requirement). *Koza* did not consider whether the search would be permissible absent a prior arrest. And in *Gagliano v. State*, the court held a warrantless protective sweep unconstitutional where the circumstances

Other courts that have considered this issue have largely, but not uniformly, determined that a protective sweep does not require a prior arrest. The New Jersey Supreme Court held that an arrest is not required to conduct a protective sweep where (1) the officers are lawfully on the premises, (2) the officers "have a reasonable articulable suspicion that the area to be swept harbors an individual posing a danger," (3) the sweep is conducted quickly, and (4) it is restricted to areas in which the person(s) posing a danger could hide. *State v. Davila*, 999 A.2d 1116, 1119 (N.J. 2010). Further, "[t]he police cannot create the danger that becomes the basis for a protective sweep." *Id.* Similarly, the United States Court of Appeals for the Eleventh Circuit approved of a protective sweep that occurred before an arrest where the officers had a reasonable belief that there was another individual present who could do them harm. *United States v. Caraballo*, 595 F.3d 1214, 1224-25 (11th Cir. 2010). So too has the First Circuit held "that police who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry." *United States v. Martins*, 413 F.3d 139, 150 (1st Cir. 2005), *abrogated on other*

---

presented no basis to conclude that rooms of the apartment other than that permissibly searched contained anyone or thing threatening officer security. 97 Nev. 297, 298-99, 629 P.2d 781, 782-83 (1981). To the extent that *Gagliano* cites a United States Supreme Court decision considering searches incident to arrest to suggest that a protective sweep requires a prior arrest, *see id.* at 298, 629 P.2d at 782 (quoting *Chimel v. California*, 395 U.S. 752, 762-63 (1969), *overruled in part by Arizona v. Grant*, 556 U.S. 332 (2009)), *Gagliano* did not rely on arrest status, and the suggestion is thus dicta.

We accordingly disavow *Gagliano* to the extent that it suggests a protective sweep requires a prior arrest.

*grounds by Hill v. Walsh*, 884 F.3d 16 (1st Cir. 2018). The Second, Fifth, Sixth, and D.C. Circuits are in accord. *See United States v. Miller*, 430 F.3d 93, 99 (2d Cir. 2005); *United States v. Gould*, 364 F.3d 578, 586 (5th Cir. 2004), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452 (2011); *United States v. Taylor*, 248 F.3d 506, 513 (6th Cir. 2001); *United States v. Patrick*, 959 F.2d 991, 996-97 (D.C. Cir. 1992), *abrogated on other grounds by United States v. Webb*, 255 F.3d 890 (D.C. Cir. 2001).

The Tenth Circuit veered slightly off the path trod by the other circuits. In *United States v. Torres-Castro*, the Tenth Circuit concluded "that a protective sweep is only valid when performed incident to an arrest." 470 F.3d 992, 997 (10th Cir. 2006). However, this difference may be only a matter of degrees, as the court noted that a protective sweep "may precede an arrest, and still be incident to that arrest, so long as the arrest follows quickly thereafter." *Id.* at 998.[4]

The Ninth Circuit's caselaw is inconsistent on this issue. *See Mendez v. County of Los Angeles*, 815 F.3d 1178, 1191 (9th Cir. 2016) (noting the intracircuit split), *vacated*, 581 U.S. ___, 137 S. Ct. 1539 (2017). In *United States v. Garcia*, the Ninth Circuit upheld a protective sweep conducted before the defendant's arrest. 997 F.2d 1273, 1282 (9th Cir. 1993). Conversely, the Ninth Circuit determined in *United States v. Reid* that officers were not entitled to conduct a protective sweep where the defendant was not already under arrest. 226 F.3d 1020, 1027 (9th Cir. 2000). However, it is unclear whether the lack of a prior arrest was the dispositive issue in *Reid*, because the government's lack of articulable facts

---

[4]The Tenth Circuit noted that "quickly" might be satisfied when "the search and arrest were separated by times ranging from five to sixty minutes." *Id.*

"that the apartment harbor[ed] an individual posing a danger" also prompted the Ninth Circuit's decision. *Id*. (alteration in original) (internal quotation marks omitted).

We agree with the majority approach, as it appropriately balances the rights of an individual to be free from an unreasonable search and the safety of the officers and other people on the scene. *See Buie*, 494 U.S. at 327 (recognizing a concern for the officer's safety as well as that of other people on scene). Officers may be lawfully in an individual's home under nonarrest situations (for example, by consent) where they have articulable, legitimate safety concerns justifying a protective sweep. *See Davila*, 999 A.2d at 1118-19. Accordingly, we conclude that a protective sweep is permissible where there are articulable facts that would cause a reasonably prudent officer to believe that the area to be swept harbors an individual who poses a danger to those at the scene. We decline to adopt a per se rule requiring an arrest before a protective sweep.

*The district court correctly concluded that the protective sweep was unlawful*

The district court found that officers did not testify to a reasonable belief that the premises harbored a dangerous individual compelling a protective sweep and concluded that the search was accordingly unlawful. The State argues that articulable facts support the officers' decision to conduct a protective sweep of McCall's bedroom. McCall counters that no facts justified a protective sweep of his room and that the officers were limited to searching areas within Winn's control. We review the district court's factual findings for clear error and analyze the legal consequences of those findings de novo. *State v. Beckman*, 129 Nev. 481, 486, 305 P.3d 912, 916 (2013).

As discussed above, before conducting a protective sweep, an officer needs articulable facts that would warrant a reasonably prudent

SUPREME COURT
OF
NEVADA

(O) 1947A

officer to believe that the area to be swept harbors an individual who poses a danger to those at the scene. *See Buie*, 494 U.S. at 327; *Hayes*, 106 Nev. at 550, 797 P.2d at 966. In applying this test in *Hayes*, we noted that it was insufficient to simply point to a possibility that an individual could be there, because "[i]f any possibility of danger were sufficient to create a reasonable belief of a danger, the police would have *carte blanche* power to conduct sweep searches of citizens' homes incident to virtually any arrest for a felony." 106 Nev. at 551, 797 P.2d at 967. Otherwise, "by means of post-hoc rationalizations, the police could justify virtually any sweep search." *Id*. Thus, we strongly disapproved of the police conducting protective sweeps as "standard operating procedure," calling it a "patently unconstitutional" practice. *Id*. at 552, 797 P.2d at 967.

We conclude that the district court did not clearly err in finding that the officers did not testify as to a reasonable belief that the area to be swept harbored a dangerous individual and that the district court correctly held the search to be unlawful. Our disposition here rests on the officers' troubling admission that they conduct a protective sweep of an entire residence as a matter of course. This search was conducted without considering whether the circumstances presented articulable facts supporting a reasonable belief that the premises harbored a dangerous person. Rather, the search was carried out regardless of what the circumstances presented. The bare possibility that a dangerous person *might be* present and hiding in a given location does not justify a protective sweep. The search here demonstrates a practice of warrantless searches unbound by the guidelines stated in *Buie, Hayes*, and elsewhere indicating when such searches may be constitutional. This practice cannot continue. We conclude that the protective sweep was unconstitutional where the officers' testimony established that the search was not based on articulable

SUPREME COURT
OF
NEVADA

(O) 1947A

facts supporting a reasonable belief that the area harbored a dangerous individual. The search here paid no heed to what the articulable facts might have been.

In light of the officers' admissions that they did not predicate the search on articulable indicia that a dangerous person was present, the State's arguments for conducting the sweep strike us as post-hoc rationalizations that cannot retroactively cure the unconstitutionality of the search.[5] *See Brumley v. Commonwealth*, 413 S.W.3d 280, 287 (Ky. 2013) ("The absence of information cannot be an articulable basis for a protective sweep that requires information to justify it in the first place."); *see also Hayes*, 106 Nev. at 551, 797 P.2d at 967 (disapproving of "post-hoc rationalizations"). The argument that the officers needed to engage in the sweep because they did not know if the room was safe has the inquiry backwards. A protective sweep is constitutionally permissible *only* where officers have a reasonable belief of danger, not when they are merely unsure if an area is safe. This limitation is critical to ensure that officers may not

---

[5]The State makes the following arguments: (1) the anonymous letter informed the officers that drugs were sold out of the far back bedroom (McCall's bedroom); (2) the letter informed them that there may be weapons in the house and warned them to be careful; (3) an officer believed Winn was attempting to alert residents in the house by telling the officers she did not remember her keypad code for the front door and by offering them two different codes; (4) during his surveillance before entering the residence, an officer saw an unidentified person coming and going from the residence and did not know, when entering the premises, whether this man was inside the house; (5) officers did not know how many people were inside the house or whether the house was safe inside; and (6) the officers engaged in merely a cursory search of the area and only to prevent danger to themselves. We need not resolve whether these bases might justify a protective sweep, as the officers' admissions here make evident that these are post-hoc rationalizations that cannot support a protective sweep.

conduct warrantless sweeps as a matter of course, but only where justified by particular, exigent circumstances. *See Hayes*, 106 Nev. at 551, 797 P.2d at 967.

While we agree with the district court's order that the search was unconstitutional, we are concerned about its scope. The order opaquely mentions that "the evidence seized pursuant to the search warrant must also be suppressed" but does not specify which pieces of evidence were so seized. The parties at oral argument before this court were unable to clarify the scope of the suppression order as well. As a result, we vacate in part and remand for the district court to enter findings regarding the specific evidence that was obtained through the improper protective sweep or as its fruit and that which was obtained permissibly. *Cf. United States v. Finucan*, 708 F.2d 838, 844-45 (1st Cir. 1983) (vacating blanket suppression order and remanding with instructions for the district court to specify which items should be suppressed as unlawfully seized and as tainted by the unlawful seizure).[6]

## CONCLUSION

Protective sweeps are permissible to ensure officer safety, not as an end-run around obtaining a search warrant. In this opinion, we hold that a protective sweep does not require a prior arrest. We affirm the

---

[6]McCall also argues that his possession of a shotgun shell was not a state crime and thus his arrest violated his Fourth Amendment rights. However, we decline to consider this issue in light of our decision and because the district court did not discuss this issue in its suppression order. *See Davis v. State*, 107 Nev. 600, 606, 817 P.2d 1169, 1173 (1991) (determining that this court need not consider a claim that was not addressed by the district court), *overruled on other grounds by Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004).

SUPREME COURT
OF
NEVADA

(O) 1947A

district court's suppression order in part because it did not err in concluding that the warrantless protective sweep here violated McCall's Fourth Amendment rights. We vacate in part and remand, however, for the district court to clarify the scope of the suppression order.

_____ , J.
Stiglich

We concur:

_____ , J.
Hardesty

_____ , J.
Herndon